FIRST STATE BANK OF LE SUEUR v. SIBLEY COUNTY BANK and Others.[1]

December 15, 1905.[2]

Nos. 14,512—(133).

**Mortgage—Consideration.**

S., being indebted to various banks and desiring further time, entered into an oral agreement with the banks and K., an attorney at law, by the terms of which he was to execute certain promissory notes and secure their payment by a mortgage upon real estate. It was agreed that the notes and mortgage should run to K., and that K. should indorse the notes without recourse, and deliver one or more of them to each bank in exchange for the note or notes of S. for equal amounts then held by such bank. The agreement provided that the lands should then be sold as soon as possible by S., with the assistance of K., and the proceeds applied to the payment of the notes pro rata. Papers were executed and delivered in pursuance of this agreement, and some of the lands were sold. S. was then adjudged a bankrupt, and his trustee brought an action against K. to have the mortgage declared void for want of consideration. K. rendered certain services as an attorney in the preparation of the papers and in carrying out the agreement. One of the banks brought this action to have their respective rights determined and the mortgage foreclosed. *Held*, that there was a good consideration for the mortgage.

---

[1] FRED. HABEGGER v. ORRIN KIPP.

December 15, 1905.

Nos. 14,445—(41).

Appeal by plaintiff from a judgment of the district court for Scott county, entered pursuant to the findings and order of Cadwell, J., and from an order denying a motion for a new trial. Affirmed.

*F. J. Leonard* and *F. C. Irwin*, for appellant.

*W. P. Warner*, for respondent.

ELLIOTT, J.

This case was argued and submitted with First State Bank of Le Sueur v. Sibley County Bank. The questions involved are the same. For the reasons stated in that case, the order and judgment appealed from are affirmed.

[2] Reported in 105 N. W. 485, 489.

**Evidence.**

> The trial court properly received evidence to show the oral agreement,. and such evidence did not tend to show an express trust resting in parol, in violation of section 4213, G. S. 1894.

**Preference.**

> The evidence did not show that S. was insolvent when the agreement. was made, or that the transaction was a preference.

**Lien of Attorney.**

> K. was entitled to an attorney's lien upon the papers and money in his. possession for a portion of his compensation as an attorney at law.

Action in the district court for Ramsey county to foreclose a real-estate mortgage executed by defendant H. Burton Strait to defendant Orrin Kipp to secure the payment of certain promissory notes respec-- tively transferred to and held by plaintiff and defendants Sibley County Bank and Lyon County National Bank. The case was tried before Olin. B. Lewis, J., who found in favor of plaintiff and for general relief as. set forth in the opinion. From an order denying a motion for a new trial, defendant Frederick Habegger, as trustee in bankruptcy of de-- fendant Strait, appealed. Affirmed.

*F. J. Leonard* and *F. C. Irwin,* for appellant.

*W. P. Warner* and *Chester L. Caldwell,* for respondents.

ELLIOTT, J.

On July 2, 1902, H. Burton Strait was indebted to certain banks, and, being unable to meet the demands of his creditors, entered into an oral agreement with the representatives of the banks which held his. paper, whereby he agreed to secure their claims in consideration of their granting him an extension of time within which to meet his obli- gations. At that time Strait was the owner of certain real estate in Minnesota and North Dakota, and owed the first State Bank of Le Sueur $1,500, the Sibley County Bank $5,500, the First State Bank of Arlington $2,500, and the Lyon County Bank $5,000. In the latter part of June, 1902, he went over his affairs with representatives of these creditors, except the Lyon County Bank, and it was agreed that Strait should execute six promissory notes, viz., one for $1,000, one for $1,500, one for $2,000, two for $2,500 each, and one for $5,000, all bearing date July 1, 1902, and payable to Orrin Kipp, or order, on or before October

1, 1903, with interest thereon at the rate of seven per cent. per annum until paid. To secure the payment of these notes, aggregating $14,500, Strait and his wife agreed to execute and deliver to Kipp a mortgage upon the real estate which is fully described in the pleadings in these actions. It was also agreed by and between Strait, Kipp, and the creditors that after the notes and mortgage were executed and delivered to Kipp he should indorse each of the notes without recourse to him and thereupon transfer and deliver them to the creditors in the following manner: One note for $1,500 to the First State Bank of Le Sueur, one for $5,000 to the Lyon County Bank, one for $2,500 to the First State Bank of Arlington, and one for $2,500, $2,000, and $1,000 to the Sibley County Bank, taking and accepting in exchange thereof from each of said banks the notes for corresponding amounts then held by the banks against Strait. By the terms of the agreement Kipp was to hold the mortgage for the use and benefit of the creditor banks, and attend to the collection of any money which might be realized from the sale of property, and account for and pay over the same, less his expenses and reasonable compensation for his services, to the owners of the notes pro rata. When the notes were paid in full the mortgage was to be released and satisfied. The Lyon County Bank subsequently became a party to the agreement. The notes and mortgages were executed and delivered and accepted by the creditors according to the agreement, and the mortgage was at various dates thereafter duly recorded in the various counties in which the lands were located.

On November 6, 1903, Strait was adjudged a bankrupt in the United States District Court, and on December 4, 1903, Frederick Habegger was by order of that court appointed trustee of the estate of the bankrupt. In February, 1904, Habegger as such trustee commenced an action against Kipp in the district court in the county of Scott, in which he alleged that the mortgage to Kipp above referred to was without consideration and void, and prayed that it be set aside and canceled. This action was defended by Kipp, and after a trial on the merits judgment was ordered in his favor, from which the plaintiff appealed. While the trustee suit was pending the First State Bank of Le Sueur brought this suit in the district court of Ramsey county against the Sibley County Bank, the Lyon County National Bank, H. Burton Strait, Emma Strait, his wife, Orin Kipp, and Frederick Habegger, as trustee, for the

purpose of having the various claims of the parties adjudicated, and the mortgage, which they claimed was held by Kipp for their benefit under the agreement above set forth, foreclosed.

All the defendants but the Straits interposed separate answers. Habegger in his answer alleged, as in the trustee suit, that the mortgage was executed and delivered to Kipp without consideration and was of no force and effect; further, that when the notes and mortgage were executed and delivered Strait was insolvent, which fact was known to all the parties connected with the transaction, and that the same were executed by Strait and wife for the purpose on the part of Strait and the banks of defrauding the other creditors of Strait. Kipp in his answer set out the terms of the agreement under which the notes and the mortgage were delivered to him, and alleged that it was agreed that he should retain the custody of the mortgage and cause the same to be recorded in the proper counties, advance the fees therefor, attend to the payment of taxes on mortgaged premises, obtain, pay for, and examine the abstracts of title to the lands, and attend to the collection and distribution of the proceeds of the sales of the property, less the advances made by him and a reasonable compensation for his services in and about the transaction. Under this agreement he alleged that he received and paid out all the items as they were stated in an account annexed. This statement showed receipts of $3,944 and disbursements of $3,-559.23, leaving a credit balance of $384.77. For his services in this connection Kipp claimed $400, and asserted his right to an attorney's lien for the amount upon the mortgage and all the papers pertaining to the transaction which were then in his possession. For his services in defending the integrity of the mortgage in the trustee suit he demanded the further sum of $525 and a lien therefor upon the same papers.

In this foreclosure suit the court determined the amounts due the respective creditors and ordered the foreclosure of the mortgage and the sale of the lands under execution; found that Kipp had discharged all his duties to the creditors, pursuant to the terms of the agreement and the mortgage, and that his account was correct; and allowed him $500 for his services in connection with the trustee suit and $400 for his services and expenses as attorney in connection and preparation of the mortgage and other papers connected with that transaction. The de-

cision also gave Kipp judgment against Strait for $900 and established an attorney's lien for $400 on the undistributed money in his possession and upon the mortgage and other papers pertaining to the same then in his hands, and made the lien prior and paramount to the rights of any and all parties in the action. From an order denying a motion for a new trial, Frederick Habegger, as trustee in bankruptcy, appealed.

1. The appellant contends that the mortgage given to Kipp is void and of no effect, because it was without consideration. The contention is without merit. It is not necessary that the consideration should have moved from Kipp, as he was the mere agent and representative of the creditors. Strait received a very valuable consideration in the extension of time within which to pay his debts to the several banks, and the banks parted with the legal right to at once proceed for the collection of their overdue claims.

2. The principal contention of the appellant is that the trial court erred in receiving oral evidence to show the agreement between Kipp, Strait, and the representatives of the various banks, as it tended to show a trust such as is prohibited by section 4213, G. S. 1894. A trust is an obligation arising out of a confidence reposed in a person to whom the legal title to property is conveyed that he will faithfully apply the property according to the wishes of the creator of the trust. There was no conveyance of this land to Kipp. In this state a mortgage is not in this sense a conveyance, but is merely a lien for the security of the debt. It does not transfer the title. Adams v. Corriston, 7 Minn. 365 (456) ; Donnelly v. Simonton, 7 Minn. 110 (167) ; Hill v. Edwards, 11 Minn. 5 (22) ; Berthold v. Holman, 12 Minn. 221 (335) ; Berthold v. Fox, 13 Minn. 462 (501) ; Rice v. St. Paul & Pac. R. Co., 24 Minn. 464. That parol evidence cannot be received for the purpose of ingrafting an express trust on a conveyance absolute in terms is not open for argument. Wolford v. Farnham, 44 Minn. 159, 46 N. W. 295. Nor can a devise absolute in form be shown by oral evidence to be in trust for another person. Moran v. Moran, 104 Iowa, 216, 73 N. W. 617 ; Orth v. Orth, 145 Ind. 184, 42 N. E. 277, 44 N. E. 17. But these admitted rules have no application to this case.

Appellant's argument starts with the unauthorized assumption that the mortgage to Kipp was a conveyance of the land, and that the creditors of Strait were attempting by oral evidence to show that he held

the title subject to an express trust in their favor. But Kipp did not hold the title to the land. It remained in Strait, incumbered by the lien in favor of his creditors, and the oral evidence did not tend to show any "trust or power over or concerning the land." Such a mortgagee is not a trustee in the sense in which the word is used in the statute; that is, a person who holds the legal title to property under an express or implied agreement to apply it and the income arising from it to the use of another person. It appears that Kipp in the Strait bankruptcy proceedings testified that he was trustee; but it is apparent that he was not using the word in its technical sense, and even if he intended to so use the word it is not material as such testimony is incompetent and would not establish the trust. Mercantile Nat. Bank v. Parsons, 54 Minn. 56, 55 N. W. 825.

In the recent case of Stitt v. Rat Portage Lumber Co., supra, page 27, we had occasion to consider the application of section 4213, G. S. 1894. It appeared that the plaintiffs and defendant had entered into a contract under which the defendant was to advance money to the plaintiffs, who were to use it in logging operations, and the profits arising from the business were to be divided between the parties. The plaintiffs, at the time the contract was made, held options for the purchase of certain lands, and it was agreed that these and other lands should be bought and the title thereto taken in the name of one Smith, who seems to have been an officer of defendant company. There were reasons why neither the plaintiffs nor defendant cared to hold the title to the lands, and as a matter of convenience it was placed in the name of Smith. The defendant claimed that the title became absolute in Smith and that the plaintiffs were attempting to establish a trust by parol evidence contrary to the statute. It was held that the conveyance to Smith was as security, and created the relation of mortgagor and mortgagee between the parties to the action, and that Smith was a mere convenience in the transaction, "whose only function was to hold the legal title as security." This also in a way describes Kipp's position in the transaction under consideration. In the Stitt case Smith held the legal title, but held it as security as an equitable mortgagee, while Kipp, in the present case, was the nominal holder of an ordinary mortgage upon Strait's lands for the benefit of his principals. As said in the Stitt case: "There is an obvious and radical distinction between

cases where one person owns or pays money for land, the title to which is put in the name of another person for convenience, under a parol agreement to reconvey or to convey as directed, and cases where one person borrows money from or contracts an obligation to another upon which land is bought, title to which is put in the name of that other or of a third person as security for the repayment of the loan or the discharge of the obligation. In the former class of cases, however varied or complicated the particular facts may be, no resulting trust arises, with the exception of cases especially provided for by statute. Pillsbury-Washburn Flour Mills Co. v. Kistler, 53 Minn. 123, 54 N. W. 1063; Anderson v. Anderson, 81 Minn. 329, 84 N. W. 112. In the latter class of cases the relationship established is not within the statute abolishing uses and trusts; and in this case the interest accruing to the plaintiff is no more inhibited by law than is the interest of the ordinary mortgagor."

The indebtedness of Strait was to the banks, not to Kipp. The aggregate was $14,500, of which specific amounts were due each bank. Instead of apportioning the lands, with a separate mortgage on each part for the benefit of the particular creditors, one mortgage for the total was made to the common agent and representative of all the creditors. The title to the lands did not pass to Kipp. True, as the agent of Strait and in the interest of the creditors, it was understood that he should aid in finding purchasers of the lands and thus assist in raising funds with which to pay the notes. But he had no power of disposition of the land described in the mortgage. Neither the mortgage nor the oral agreement gave him any power or authority to sell the lands or to execute deeds therefor. Naming him as nominal mortgagee was purely a matter of convenience, certainly less objectionable than was the use of Smith as the receptacle of the title in the Stitt case, as the reasons of the parties in that case were not entirely commendable. Kipp was by the agreement required to assign the notes to the real owners, the creditors of Strait. This was a mere formality. He had no discretion, acquired no rights, and incurred no obligations. The debt was severable, and the mortgage secured each of the various holders in proportion to its share of the obligation. The assignment of the debt, if any debt could be said ever to have existed to Kipp, carried with it the security of the mortgage, with formal assignment of the latter. As

a matter of fact the transfer of the notes through Kipp was an arrangement of convenience to secure unity of control. We cannot see any valid legal objection to such a method of procedure. Any one at all familiar with modern business methods knows that it is a very common method of adjusting conflicting claims. It secures the concentrated and harmonious action of creditors, and enables the debtor to handle his assets to the best advantage and for the common benefit of all parties concerned.

A transaction somewhat similar to this is discussed in the case of Tapia v. Demartini, 77 Cal. 383, 19 Pac. 641. Tapia and his copartner, being indebted to Busch, Mooney, Herringlake, and Crowell, individually, in different amounts, executed a promissory note for $15,000 to Busch, and to secure its payment executed a mortgage upon certain real estate. It was alleged that "said note and mortgage were executed and delivered with the understanding and agreement among all the parties thereto and said Mooney and Crowell that the same were so executed and delivered to secure the payment of the several balances of account aforesaid then due said Busch and Herringlake as copartners aforesaid, and said Mooney and Crowell, respectively, and to secure further sums to become due for goods, wares, and merchandise, to be afterward sold and delivered by said Mooney and Crowell, respectively, to said mortgagors, not exceeding the sum agreed to be paid in said promissory note." It was contended that this amounted to a declaration or express trust in lands, which could not rest in parol, but the court said: "The question presented is not a new one. The decided cases are clearly to the effect that such an agreement as the one under consideration is valid and binding upon the parties. * * * This being true, a transaction of this kind is not within the provisions of the code that an express trust in lands cannot be created, except by an agreement in writing or a parol agreement fully executed. Being but a personal chattel, 'a parol trust may attach to a mortgage that the mortgagee shall hold it in trust for his own benefit, and in part for the benefit of another.' 1 Jones, Mort. §§ 376, 846; Hubbell v. Blakeslee, 71 N. Y. 63, 69; Wood v. Weimar, 104 U. S. 786; Hall v. Crouse, 13 Hun, 557; 1 Pomeroy, Eq. Jur. § 74; 3 Pomeroy, Eq. Jur. § 1181. The proof of such an agreement does not vary the terms of the written instrument. 1 Jones, Mort. § 376."

3. The evidence fails to show that the mortgage was executed for the purpose of creating a preference in favor of certain creditors. It was dated July 2, 1902, and was recorded on various dates between November 13, 1902, and May 29, 1903. Strait was not adjudged a bankrupt until December 14, 1903, in proceedings begun November 6, 1903. Even had the transaction of July 2 been intended as a preference, the four months within which the trustee in bankruptcy could attack it had expired long before Strait was adjudged a bankrupt. Seager v. Lamm, 95 Minn. 325, 104 N. W. 1. The evidence also fails to sustain the claim that Strait was insolvent when the mortgage was executed and delivered, or that the creditors had any knowledge of his financial condition, other than as disclosed by the transaction itself. Under Bank. Act July 1, 1898, c. 541, § 1, subd. 15, 30 St. 544 [U. S. Comp. St. 1901, 3419],

> A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts. Collier, Bank. (5th Ed.) 862.

There was no evidence in the case even tending to show that Strait was on July 2, 1902, insolvent within this definition. The claim that the mortgage was fraudulent was disposed of adversely to the claim of the appellant by the trial court, and there is ample evidence to sustain its conclusion.

4. The court allowed Kipp an attorney's lien for the sum of $400 upon the mortgage, the undistributed proceeds of sales of land, and the abstracts and other papers pertaining to the transaction now in his hands, and made the lien paramount to the rights of all other parties. The amount of $400 for which he is given a lien was found to be reasonable compensation for the services rendered by him as an attorney in and about the preparation of the mortgage, recording it in different counties, obtaining abstracts of title, attending to the distribution of money, and the numerous other things necessary and proper to be done in connection with the preparation of the notes and mortgage and pa-

pers incident thereto. For his services in connection with the suit brought against him by the trustee in bankruptcy he is given a judgment against Strait for the full sum of $500. Kipp was an attorney at law, and the services for which he was given a lien upon the specific property in his possession were rendered at the request of parties interested in the transaction, and are of such a character as to entitle him to a lien under G. S. 1894, § 6194. See also Jones, Liens, cc. 4, 5; Overton, Liens, c. 6, §§ 62–64. The services for which the lien is established were all rendered in connection with the preparation, custody, and care of the particular papers upon which the lien is established and the collection of the money now in his hands.

But Kipp's claim for $500 for defending the action to cancel the mortgage should be limited to the funds to be distributed to the banks, for the reason that his services were necessary to protect their common security. If the mortgaged premises sell for no more than enough to pay the amount due on the mortgage and the expenses of foreclosure and sale, then Kipp should be paid the amount of his lien from the net amount to be distributed to the banks; but, if the premises sell for a sum exceeding the amount due and expenses, the surplus will belong to the trustee and Kipp will have no lien upon it. The record does not show the value of the land, and it may well happen that there will be no surplus for the trustee.

It follows that it is not necessary to modify the trial court's order for judgment in order to do justice to all parties. Therefore the order appealed from must be affirmed, without prejudice to the right of Kipp to assert his claim to the surplus, if any there may be, as we have indicated. So ordered.

Order affirmed.