MARY EVANS SCOTT v. FRED H. KIRTLEY.

152 So. 721.

Division A.

Opinion Filed December 6, 1933.

Petition for Rehearing Denied February 19, 1934.

638

*Peters & Kemp,* for Appellant;

*James M. Carson, Douglas D. Felix, Henry K. Gibson*
and *Roscoe Brunstetter,* for Appellee.

Davis, C. J.—In this case complainant below, Fred H.
Kirtley, alleged that as a duly licensed and qualified prac-
titioner of law in the State of Florida, he was retained by
defendant below, Mary Evans Scott, for the purpose of
representing her in a professional capacity in securing for
her a child's part in an estate in which Mrs. Scott was
interested; that when she retained Mr. Kirtley, Mrs. Scott
was completely out of funds and unable to pay her attorney
a retainer or other fee at the time she engaged him, and
that it was accordingly arranged between the parties that
the attorney so employed would be paid his fee for his
services out of, and from any and all property obtained by
defendant from the services of the attorney rendered in
securing said child's part, and that acting upon such basis,
complainant undertook and accepted employment as de-
fendant's attorney and that through the aid, services and
skill of the complainant as an attorney, certain described
real estate had been obtained and acquired by Mrs. Scott,
all of which had been produced in her hands by the skill,
services and labor of complainant as attorney for the de-
fendant; that the real estate so realized was of the value
of $10,000.00 and that notwithstanding the services rendered
by complainant, that defendant has failed, neglected and

refused to pay her attorney any sum whatsoever, but on the contrary was endeavoring to defeat the payment of any fee to him by encumbering, or attempting to encumber the property, wherefore complainant sued defendant in an action in equity and claimed a lien on the property he had realized for her, to the extent of the reasonable value of his services rendered and performed, as defendant's attorney.

Motion was made to strike paragraph 5 of the amended bill. This motion, together with a general motion to dismiss the bill as a whole for want of equity, was overruled and defendant has appealed from the interlocutory order.

The bill of complaint, as we construe its allegations, is not a bill brought to enforce a lien that is claimed to have arisen on the land as a result of the services rendered by the attorney to the owner in recovering it for her. On the contrary, the bill appears to be predicated upon an asserted equitable right to have an equitable lien for the reasonable value of the attorney's services, impressed upon the land recovered as a direct result of those services, and thereafter to have such equitable lien enforced against the property involved.

We are not unmindful of the point strenuously urged before us, both in the briefs and during the oral argument, *that at common law* an attorney has no lien upon an estate recovered for a client, but only on papers in his hands.*

*The common law is but the crystallized conclusions of the judges arrived at from applying the principles of natural right and justice to facts actually experienced in cases before them. From certain premises conclusions were reached. From such conclusions the rules of the common law were deduced and announced in the decided cases. But when changes in the premises must alter the conclusion which originally gave rise to a particular rule, it would seem but logical that, when the reason for a rule has disappeared, the rule itself should go with it. Lawyers were first admitted to practice by virtue of the English

But in this case, we are not asked to either recognize or enforce any common law lien. On the contrary, the claim is for an *equitable* lien.

Such an equitable lien, complainant asserts, should be decreed in this case in his favor for the amount of his attorney's fees, because of the equities that he asserts have arisen out of his relationship with the defendant, his client, and the relationship of his professional services with the defendant client's property that has been made the *rem* of the instant suit.

As has been well stated in 17 Ruling Case Law, par. 14, page 605, in discussing equitable liens:

"Even in the absence of an express contract a lien, based upon the fundamental maxims of equity, may be implied and declared by a court of chancery out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings."

In this case it is shown by the allegations of the amended bill of complaint (admitted by the motion to dismiss as being true) that Kirtley, the attorney, was retained by Mrs. Scott, to render to her certain valuable professional services, in and about securing for her own individual benefit, a speci-

statute, 4 Henry IV, Chapter 18. In the United States the admission to practice of attorneys has never been controlled by any common law, other than such rules as were derived from the implications of the English statutes. At common law the rule was that all litigants had to appear in person and appearance by attorneys was unauthorized except by statute. State v. Kirke, 12 Fla. 278, 95 Am. Dec. 314. Naturally no lien was allowed at common law for the rendition of services by attorneys in court, because the presence of attorneys in court was only through special permission of the King, or by virtue of statutes. Faced with the task of trying to apply the ancient conceptions of the practice of law to modern conditions wherein the employment of clerks and stenographers, the procurement

fied interest in certain property, the full enjoyment of which, to the extent she now has it, she could not have realized but for the legal aid, skill and services of her attorney employed and exercised in her behalf. The character and extent of the services rendered is fully described and set forth. It is averred that the services charged for were such only as the real necessities of the case required.

It is further stated that such services embraced lengthy and technical statements of accounts, income tax returns and estate tax returns; that the client, being a woman and possessed of little or no business experience, made the preparation of the case for trial "tedious and wearisome" to plaintiff in undertaking to act as her attorney.

Above all, it is pointed out that as an attorney in the matter, plaintiff Kirtley was successful in his legal undertaking on his client's behalf, and that as a result of the legal services rendered by him, both in the court of original instance and in an appellate court, his client, Mrs. Scott, has come into possession and realization of certain valuable real estate which she now holds, but is attempting to dis-

of occupational licenses and payment of taxes for the privilege of becoming an attorney for hire, the burden of office rent, purchase of legal supplies and the necessity of constantly spending money to keep current a working law library, suggests to the mind of the writer of this note that the implications of our statutes recognizing lawyers as public servants for hire as well as officers of the court, should be given some consideration by the present day courts in declaring what, if any, is to be considered as the common law in the light of known conditions of the present day. See Graeber v. McMullin, 56 Fed. (2nd) 497. To say that a lawyer could claim a lien on a horse for shoeing the animal, but not for his legal services in recovering the same horse in a hotly contested law-suit, is wholly illogical to the mind of the writer of this opinion.

pose of, without paying anything at all for her attorney's justly due compensation for his services.

We are of the opinion that where, as the result of services rendered by an attorney at law in suing for and recovering for his client certain real estate, the client has realized the real estate as fruits of the attorney's professional services, under an express or implied understanding on the part of both attorney and client, that a reasonable attorney's fee would be charged, and would of necessity be payable out of the property realized by the client as a result of the successful efforts of the attorney in litigating for it, that even in the absence of any express contract for a definite amount of fee, an equitable lien, based upon the fundamental maxim of equity that no one shall be unjustly enriched at another's expense, may be implied and declared by a court of chancery, out of general considerations of right and justice which must be applied to the relations of the attorney and client with reference to the fruits of the transaction, and the circumstance of their dealings with each other, with the understanding that the services of the attorney would be payable out of what the client should realize as a result of the successful efforts of the attorney. 17 R. C. L., page 605, par. 14; Graeber v. McMullin, 56 Fed. (2nd) 497; Certiorari denied by United States Supreme Court in 287 U. S. 603, 56 Sup. Ct. 9, 77 L. Ed. 19.

In Fillmore v. Wells, 10 Colo. 228, 15 Pac. Rep. 343, the Supreme Court of that State set forth a discussion on the subject of the practice of law, which we deem worthy of quotation here, although that case has been criticized by counsel for appellant as being inapplicable to Florida, because of the weight attributed in the opinion to a Colorado statute:

" 'The custom of advocates to render their services *quid-*

*dam honorarium* does not exist in this country. We doubt very much if counsel for appellant, who discourse with such evident admiration upon this practice as it existed centuries ago in Rome, in France, and in England, would be willing to see it established in Colorado. The advocate or counselor who should here today imitate Cicero, and give his services gratuitously, relying solely upon the gift which, in the language of Sir John Davy, 'guieth honor as well to the taker as the guier,' would soon find the wolf at his door, unless, like Cicero, he had other sources of revenue. It may, from counsel's standpoint, be a humiliating fact, but it is a fact, nevertheless, that in this respect the legal profession occupies the status with us of other employment followed for a livelihood. The attorney is considered worthy of his hire, and is not in danger of disbarment if he contract in advance for his fees, and collect them by suit, when necessary, after the service is rendered. * * *

" 'A (second) question fairly presented by the record and arguments before us is, can a suit in equity be maintained by the attorney for the enforcement of his lien, when the employment is questioned, and the amount of his compensation is unliquidated? Counsel contend that since a court of equity is not the proper forum to entertain inquiries into the questions of contract, nor the proper tribunal to hear evidence and determine the reasonable value of services rendered, these matters ought to have been adjudicated in a court of law. They say that plaintiffs should have brought their action in a legal forum, and there have all controversy concerning the contract, as well as the amount of compensation first determined unless a court of equity would before the Code, have been properly clothed with jurisdiction over the cause of action stated in the complaint before us the action cannot be maintained in equity

under the Code. The attorney's lien, whether under the statute or at common law, is equitable in its nature. Even the decisions in this country, which confine its existence and application to the narrowest limits, always speak of it as an equitable lien, right or privilege. It is not property in the thing which gives a right of action at law. It is a charge upon the thing which is protected in equity. Courts of law may recognize it when the *res* is in possession of the lienor and the owner is seeking to deprive him of possession. But where the thing is not in possession, and some affirmative action is required by the attorney, he, like other lien claimants, must seek relief in equity. * * * since a court of equity is the only forum that can enforce by proper decree the lien rights, we are of the opinion that this is one of the cases wherein such court may take and retain jurisdiction for all purposes.' "

So holding, we affirm the orders appealed from, and remand the cause for further proceedings according to the course of practice governing proceedings in chancery.

Affirmed and remanded.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., concurs in conclusion.

ELLIS, J., dissents.

ELLIS, J. (dissenting).—This is an appeal from an order overruling a motion to dismiss a bill of complaint by which an attorney at law sought to establish an equitable lien upon lands which he had procured to be set off to his client, a widow, as a child's part in the estate of her deceased husband, under an agreement with the widow that the complainant "would of necessity have to be paid * * * out of, and from any and all property obtained by defendant (the widow) from the services of the plaintiff in securing said child's part."

There was no agreement between the parties as to the amount which the widow should pay to the attorney for procuring an order from the appropriate court setting aside and confirming to the widow such portion of the lands of her deceased husband as might be deemed to be a child's part, nor any agreement that the attorney should have a lien upon any lands or other fund that might be set apart for her. There was a mere understanding that the solicitor's "fees * * * for services to be rendered by said plaintiff to defendant would of necessity have to be paid * * * from * * * property obtained by defendant from the services of the plaintiff * * * in securing said child's part."

There is much in the bill about the volume of the work done and the nature of the services, which can have no special bearing upon the relief sought, because if an equitable lien upon the property recovered exists in favor of the plaintiff it does not depend upon the volume of services rendered nor the difficulties and inconveniences to which the plaintiff has been subjected. That he was employed by the defendant, rendered the services and recovered the property and the mere understanding that his fees were to be paid from the property recovered constitute the conditions on which the claim is predicated.

It is inaccurate to say that no lien existed at common law in favor of an attorney for his fees upon property of his client which comes into the attorney's possession by reason of his services. While the term "lien" has been questioned as an appropriate one, the right to "defalcate" being the more accurate expression, the custom has existed from very early times. It is analogous to the "retaining" lien" of the artisan or laborer. That form of "lien" is the right of the attorney to retain possession of documents, money or other property of his client, coming into his hands

professionally until a general balance due him for professional services is paid. See Sweeley v. Sieman, 123 Iowa 183, 98 N. W. Rep. 571; First State Bank of Le Sueur v. Sibley County Bank, 96 Minn. 456, 105 N. W. Rep. 485; Cones v. Brooks, 60 Neb. 698, 84 N. W. Rep. 85; Heywood v. Maynard, 103 N. Y. Supp. 1028; Leask v. Hoagland, 118 N. Y. Supp. 1035; Weed Sewing Machine Co. v. Boutelle, 56 Vt. 570, 48 Am. Rep. 821; Northrup v. Hayward, 102 Minn. 307, 113 N. W. Rep. 701; Rooney v. Second Avenue Railroad Company, 18 N. Y. 368; Dennett v. Cutts, 11 N. H. 163; Ward v. Craig, 87 N. Y. 550; Sanders v. Seelye, 128 Ill. 631, 21 N. E. Rep. 601.

Our statutes do not change the common law in that regard, nor is there anything in our statutes which changes the common law relations between attorneys and their clients in such a manner as to affect the right, nor is there any reason for saying that the common law in this regard is inapplicable to the " 'habits and conditions of our society, or contrary to the genius, spirit and objects of our institutions.'" See Sanders v. Seelye, *supra.*

Now there is a difference between the retaining lien, or right to defalcate, and the charging lien, which is an equitable right to have the fees and costs due to an attorney for services in a suit secured to him out of the judgment or recovery in the particular suit, the attorney being regarded as an equitable assignee of the judgment. It is based on the equity that the plaintiff should not be permitted to appropriate the whole of a judgment in his favor without paying thereout for the services of his attorney in obtaining the judgment. It is an exception to the general rule in that it lacks the element of possession which is essential to ordinary liens and for this reason such a lien did not exist at common law. The existence of the lien was recognized

in several early English cases and it exists in most juris-
dictions in this country ether by statute or by virtue of
judicial decisions. See Carter v. Davis, 8 Fla. 183; 6 C. J.
767.

Both the retaining and charging liens are claim to the
equitable interference of the court to have the judgment held
as a security for the debt. The remarks of Baron Parke
and Baron Martin in the case of Hough v. Edwards, 1 H.
& N. 171, 37 Eng. L. & Eq. 470, are said to exactly define
the attorney's lien:

"Primarily, without doubt, the lien originates in the con-
trol which the attorney has by his retainer over the judg-
ment, and the processes for its enforcement. This enables
him to collect the judgment and reimburse himself out of the
proceeds. It gives him no right, however, to exceed the
authority conferred by his retainer. But inasmuch as the
attorney has the right, or at least is induced, to rely on his
retainer to secure him in this way for his fees and dis-
bursements, he thereby acquires a sort of equity, to the
extent of his fees and disbursements, to control the judg-
ment and its incidental processes, against his client and the
adverse party colluding with his client, which the court will,
in the exercise of a reasonable discretion, protect and en-
force. And on the same ground, the court will, when it can,
protect the attorney in matters of equitable setoff. We
think this is the full scope of the lien, if lien it can be
called. It does not authorize the attorney to sue the judg-
ment, without the consent or direction of the client." 6 C. J.,
*supra*.

See Horton v. Champlin, 12 R. I. 550, 34 Am. Rep. 722.

In this case, however, there is sought to be imposed upon
the property recovered and in the hands of the client a lien
enforceable in equity; the claim resting upon an agreement

that the fee for services shall constitute a lien upon the property recovered. In some jurisdictions a contract between an attorney and a client for the payment of the attorney out of the judgment recovered operates as an equitable assignment of the fund *pro tanto* and creates a lien on the specific fund, provided it was the intention of the parties that the fund itself is to be looked to for security, but that doctrine has never been engrafted upon the jurisprudence of this State, and the Supreme Court of the United States in Burke v. Child, 21 Wall. 441, 22 L. Ed. 623, said:

"But a mere agreement to pay out of such funds is not sufficient. Something more is necessary. There must be an appropriation of the fund *pro tanto,* either by giving an order or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor."

And in 6 C. J. 769 it is stated:

"On the other hand a mere naked promise to pay an existing debt out of a particular fund, unaccompanied by any words of transfer or the giving of any power or authority over the fund, does not operate to create a lien thereon." See also Porter v. White, 127 U. S. 235, 8 Sup. Ct. Rep. 1217, 32 L. Ed. 112.

Whether the particular agreement constitutes a lien is a matter of construction. In view of the very close and confidential relation which exists between attorney and client, such agreements should be most carefully scrutinized and construed most strongly against the attorney.

I think the order should be reversed and the bill should be dismissed.