44 So.2d 679 (1950)
GREENFIELD VILLAGES, Inc.
v.
THOMPSON et al.
Supreme Court of Florida, Special Division B.
February 24, 1950.
Rehearing Denied March 18, 1950.
*680 Marion Brooks and R.B. Schallern, Miami, for appellant.
R.K. Bell, Miami, for Simpson, St. Pierre, Deene & Burnham, intervenor-appellees.
L.S. Bonsteel, Miami, for Smathers.
Thompson, Maxwell & Dyer, Miami, for plaintiff-appellees.
CHAPMAN, Justice.
Samuel Goldman in 1946 bought a tract of land from Glenn H. Curtiss Properties, Inc., for the sum of $35,000, and shortly thereafter caused the tract to be subdivided into a large number of lots. He made a down payment of $3,500 at the time of purchase. He perfected a sales organization and immediately sold a sufficient number of lots to pay the balance due to the Curtiss Properties, Inc., for the property. The title to the property was taken in the name of Goldman's corporation, to wit, Greenfield Villages, Inc. The intervenors below in this suit sold or caused to be sold a sufficient number of lots out of the tract to pay the balance due on the agreed purchase price to Curtiss Properties, Inc. It appears by the record that advancements in cash were made by some of the intervenors and used to pay costs of perfecting the subdivision but neither of them contributed funds used in payment of the purchase price of the property.
On March 4, 1946, Gene G. Olsen, a sister of Samuel Goldman, filed in the Circuit Court of Dade County, Florida, her bill of complaint against her brother and alleged that she supplied Goldman the down payment of $3,500 paid to Curtiss Properties, Inc., on the tract and therefore was an equitable owner of an undivided one-half interest in the tract with her brother, Samuel Goldman. On June 14, 1946, a decree was entered in the court below decreeing Gene G. Olsen the equitable owner of a one-half undivided interest in the tract. On appeal here the decree was reversed  largely on the theory that the quantum of evidence adduced was legally insufficient to support the decree of the Chancellor. See Goldman v. Olsen, 159 Fla. 435, 31 So.2d 623.
On the going down of our mandate the cause was heard in the lower court, when *681 the equities thereof were found to be with the defendant, Samuel Goldman, and against the plaintiff, Gene G. Olsen. Pertinent language of the lower court's decree is viz.: "It is the conclusion of this court that the evidence upon which the plaintiff (Gene G. Olsen) relies to establish the material allegations of her bill was not clear, strong and unequivocal, and on considering the material evidence in this cause this court entertains serious and reasonable doubts as to the existence of the trust sought to be asserted by the plaintiff". The bill of complaint was dismissed by the Chancellor on March 19, 1948. The plaintiff, Gene G. Olsen, appealed and the dismissal order was here affirmed. See Olsen v. Goldman, 160 Fla. 970, 37 So.2d 166.
On February 8, 1949, the legal firm of Smathers, Thompson, Maxwell & Dyer filed in the court below their bill of complaint against Greenfield Villages, Inc., Samuel Goldman's corporation, and alleged the existence of an agreement between the plaintiffs and the defendant by the terms of which the defendant agreed to pay the plaintiffs an attorney's fee, reasonable in amount, to be paid out of the moneys arising from the sale of the described lots, after the termination of the litigation above referred to. The plaintiffs, relying upon the agreement with the defendant, performed their part of the agreement and the defendant accepted the profitable and beneficial services so rendered, but refused or declined to abide with or carry out the terms of the said agreement. The prayer of the bill was for the entry of a decree establishing an enforceable lien against the described property.
On February 24, 1949, an order was entered below allowing Allen Simpson, Rosario St. Pierre, Filbert J. Deene and Fred Burnham to intervene in the suit, supra, to recover attorney's fees. It appears by the petition of the intervenors that they resided in or about the property and were acquainted with many airline employees and some of the described lots, it was believed, could be sold to these employees. Pertinent allegations of the petition of the intervenors are viz.:
"* * * As an inducement to these petitioners the said Samuel Goldman promised them that if they would assist him in the promotion of this scheme, he would organize a corporation, making them officers and employees so that they would own an interest in said development and would share in the profits thereof. That without any agreement at that time as to the amount of their interests, and because the scheme was in the development stage, these petitioners proceeded to engender among their fellow employees interest in this airline community to be established and went about soliciting prospective purchasers, and were finally successful in raising among their group approximately $35,000, which was placed in escrow as the purchase price of lots to be sold to them if and when title was taken. Petitioners allege that the said Samuel Q. Goldman fraudulently organized Greenfield Villages, Inc., a Florida corporation, and did not make any of these petitioners an officer in said corporation nor issue stock to them as he had promised, as aforesaid, and did take title to said property in the name of Greenfield Villages, Inc., a Florida corporation. The said Samuel Q. Goldman, thereafter, conferred on numerous occasions with these petitioners concerning their interest in said property and did verbally agree with them that their interest amounted to Five Thousand Dollars ($5,000.00) each and agreed that they should have a lien upon said property for said amount of money; but that the said Samuel Goldman has refused and does now refuse to execute a written instrument evidencing said obligation and lien, and has refused and does now refuse to make payment thereof.
"Petitioners further represent that they are entitled to a lien in the amount of Five Thousand Dollars ($5,000.00) each for their interest in the property, as aforesaid, for the reason that the said Samuel Goldman acquired said property solely through their services and with the money raised and solicited by them, and that no other moneys went into the purchase of said land". The intervenors prayed that on final hearing the court decree that each thereof be entitled to a lien on the described *682 land in the amount of $5,000, and that the property be sold to satisfy the lien so decreed.
Greenfield Villages, Inc., by answer admitted the purchase of the property from Curtiss Properties, Inc.; admitted also that it was necessary to raise $35,000, the intervenors approached and their aid procured, and, as a result, the money was raised and the tract of land paid for. Each and all other allegations of the intervenors' petition were denied. The Greenfield Villages, Inc., filed a motion to dismiss the petition of the intervenors on grounds that (1) the petition was without equity; (2) it does not appear that Greenfield Villages, Inc., by an instrument in writing, agreed to convey to the intervenors-petitioners any interest in the described property; (3) the alleged agreement was verbal; (4) the intervenors-petitioners have a complete and adequate remedy at law.
The Chancellor decreed the equities of the cause on final hearing to be with the plaintiffs and the amount of the attorney's fee was fixed at the sum of $15,000 and made, by the terms of the decree, a lien upon the property described in the bill of complaint. The decree held that Greenfield Villages, Inc., was indebted in the sum of $5,000 to each of the four intervenors, to wit, Allen Simpson, Rosario St. Pierre, Filbert J. Deene and Fred Burnham. The respective sums supra, by the terms of the decree, were made liens upon the described lands equal in dignity as between the intervenors but each subordinate and inferior to the lien of the plaintiffs. Greenfield Villages, Inc., appealed.
It is contended here that the allowance of $15,000 in the court below as a reasonable attorney fee is not justified by the facts appearing in the record nor the applicable law. We have held on many occasions, where a person employs an attorney to perform legal services and no expressed agreement was reached between the parties as to the amount of the attorney fee to be paid for the services rendered, the law under such circumstances implies a contract upon the part of the party employing the attorney to pay him reasonable compensation for such services. Stitt & Co. v. Powell, 94 Fla. 550, 114 So. 375. There is no dispute that the plaintiffs below were counsel for the defendant-appellant, but only the amount of compensation.
Some of the elements by law required to be considered in determining reasonable compensation for an attorney for services rendered are viz.: The services performed; the responsibility incurred; the nature of the services; the skill required; the circumstances under which it was rendered; the customary charges for like services; the amount involved; the ability of the litigants to respond; the value of the services to the client, and the beneficial results, if any, of the services. Other essentials frequently are considered but the foregoing is the usual yardstick of measurement. Penn-Florida Hotels Corp. v. Atlantic National Bank, 126 Fla. 344, 170 So. 877. The power of a court of equity to award equitable liens for attorney fees. See Ward v. Forde, 154 Fla. 383, 17 So.2d 691; Knabb v. Mabry, 137 Fla. 530, 188 So. 586; Scott v. Kirtley, 113 Fla. 637, 152 So. 721, 93 A.L.R. 661.
The record discloses that the parties, prior to the institution of this suit, held a conference and considered the amount of the attorney fees. Goldman, in the conference, asked Mr. Maxwell: "Will you take $10,000.00 cash if" he (Goldman) got it within the week. Mr. Maxwell, for the plaintiffs, said "Yes". If he (Goldman) was not able during the week to raise $10,000, he (Goldman) would be prepared to convey real estate valued at $15,000. Goldman failed to pay the $10,000 or convey real estate valued at $15,000. On June 17, 1948, plaintiffs wrote Goldman they would retire as his counsel if he would pay a minimum fee of $10,000 and not over $12,500. One of the intervenors advanced in Goldman's behalf about $800, which was used by the plaintiffs incident to the appeals. Exclusive of the claims here presented, other claims against the property amount to between $60,000 and $65,000. The agreed purchase price in March, 1946, was $35,000. A real estate broker testified that if the property was sold in a single *683 parcel it would be worth, in his opinion, $100,000. If sold as lots, it should be sold for "about $200,000.00". Goldman testified that he could not sell any of the lots and he owed on the property between $60,000 and $65,000. According to the evidence, if the property was sold in lots for $200,000, the net value would be $140,000, less costs of sale, and if it was sold as a single parcel it would bring $100,000, less $60,000 due thereon, leaving a net value of $40,000. Samuel Goldman, President of Greenfield Villages, Inc., proposed the fee in the sum of $10,000  if he could raise the money, but the record shows that this proposal was purely in the nature of a compromise settlement and was not a binding agreement that the sum of $10,000 constituted a reasonable attorneys fee. Neither Goldman nor Greenfield Villages, Inc., carried out the terms and conditions of the proposed settlement within the time agreed and hence the real question on this issue is whether the sum of $15,000 was a reasonable attorneys fee for the services rendered. On the whole evidence the Chancellor determined that such an amount was a reasonable award, and the appellant has failed to show an abuse of discretion in this respect.
The intervenors assisted Goldman in promoting the real estate enterprise. The four of them became interested in the early Fall of 1945, and undertook the sale of the lots on an escrow purchase plan. It was agreed that a corporation would later be formed which would hold the title to the real property; the intervenors would be made officers of the corporation and the stock to be issued would be "equitably divided" among them. Mr. Simpson testified that Goldman agreed on a value of a $5,000 interest in the corporation to each intervenor. There was nothing in writing evidencing the agreement of the parties. The corporation was formed in March, 1946, after the sale of the lots by the intervenors, and title to the property placed in the name of the corporation. It was stipulated that the four intervenors would give testimony as was given by Mr. Simpson. The fraud relied upon to give a court of equity jurisdiction to establish an equitable lien in favor of the intervenors was the services rendered by them in selling the lots and paying $35,000 for the purchase of the land and a complete repudiation of the agreement by Goldman. The suit at bar is against the corporation, Greenfield Villages, Inc., and Goldman was not made a party. In the case of Sumner-May Hardware Co. v. Scally, 66 Fla. 93, 62 So. 900, we held that contracts made for a corporation by its promoters prior to its creation are not enforceable by or against the corporation after its organization. It is not contended that the promoters' agreement was ever ratified after organization by Greenfield Villages, Inc.
This Court is committed to the rule that where the only relief sought by a bill in equity is one for which a plain, adequate and complete remedy at law exists  then a court of equity has no jurisdiction and a resort thereto is improper and unnecessary. McClelland v. Marion Holding Co., 103 Fla. 646, 137 So. 887; Willis v. Fowler, 102 Fla. 35, 136 So. 358, and similar cases. The intervenors, as shown by the record, have an adequate remedy at law against Samuel Goldman and his alter ego corporation, Greenfield Villages, Inc. The portion of the decree in behalf of the intervenors entered below is reversed with directions that their cause of action be transferred to the law side of the court with an appropriate order for making up the pleadings and a final disposition thereof according to law.
The decree appealed from is hereby affirmed in part and reversed in part.
TERRELL, Acting C.J., and SEBRING and HOBSON, JJ., concur.