**UNITED STATES of America**

v.

**72.71 ACRES OF LAND, MORE OR LESS, SITUATE IN MONTGOMERY COUNTY, State of MARYLAND and John C. Webb, et al.**

**No. 8628.**

United States District Court
D. Maryland,
Civil Division.
Oct. 31, 1958.

Leon H. A. Pierson, U. S. Atty., Martin A. Ferris, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

John C. Webb, in pro. per.

CHESNUT, District Judge.

This is a federal land condemnation case. The instant matter presently presented raises the question whether former attorneys for John C. Webb and wife are entitled to a lien on a fund heretofore paid into court by the United States for a deficiency judgment establishing the amount of just compensation payable to the landowners. From the record in the case it appears that—

On December 5, 1955 the United States filed its complaint for condemnation of 72.71 acres of land in Montgomery County, Maryland, including tracts Nos. A–100–1, etc., belonging to John C. Webb and wife. Upon the deposit of $8,600 as the estimated just compensation for these tracts, the court entered a judgment of condemnation. Promptly thereafter the property owners entered their appearance and filed a claim for compensation in a much larger amount. They were then represented by James R. Miller, an attorney, who later withdrew his appearance and another attorney, John E. Oxley, entered his appearance for the property owners. By agreement, the deposit of $8,600 was paid to the landowners and thereafter as a result of three days' trial the jury, on October 24, 1957, awarded to the landowners the sum of $14,000 as just compensation for their property. Thereafter on November 1, 1957 Mr. Oxley, the trial counsel, withdrew his appearance and immediately Messrs. Cecil F. Custer and Keith L. Seegmiller entered their appearance for Webb and filed a motion for a new trial. After hearing argument of counsel this motion was *overruled* in a memorandum opinion on December 17, 1957. 157 F.Supp. 401. On appeal the order of this court was affirmed. Webb v. United States, 256 F.2d 669. On August 28, 1958 Custer and Seegmiller and John E. Oxley, separately and respectively, filed the present motion for a lien on the deficiency sum of about $6,000 theretofore paid into court by the United States in accordance

with the jury's inquisition. These motions and separate affidavits have been opposed by Webb in an answer prepared and filed by himself in proper person. Mr. Webb is a graduate of the United States Naval Academy who resigned from the Service some years ago and since then has been engaged in several business or professional activities. After hearing oral arguments on these motions and consideration of briefs filed by the parties with respect thereto, I have reached the conclusion that the motions for a lien on the judgment must be and they are hereby *denied.*

Briefly stated, the respective motions of Mr. Oxley and Custer & Seegmiller are to the effect that they had an oral agreement with Mr. Webb that their fees in the amounts stated should be paid to them "out of the funds" deposited by the United States in the condemnation case. In opposition Mr. Webb's reply in very brief substance is a denial that there was an agreement to pay out of the judgment moneys, and in addition he disputes, in some part at least, the amounts claimed by the respective attorneys, and in larger part contests their right to compensation on the ground that their services were performed either negligently or with lack of reasonable professional skill.

■ In this situation it seems obvious that the matter cannot be determined merely on the papers. While there is a fund in the Registry of the Court in accordance with the applicable federal land condemnation procedure, the controversy is not one that could be summarily decided on the motion and opposition papers. At least due process would require a full hearing of testimony in court and a finding of facts by a plenary judicial proceeding. Nor is this the kind of a case for a summary proceeding as is permissible in some cases in bankruptcy as distinct from a required plenary proceeding. Unless the attorneys in this case have a legal right to have this incidental controversy decided by the court in this type of

case, I would think it highly undesirable to establish a precedent requiring the Judge in a federal land condemnation case to decide, after the otherwise final adjudication of the case between the United States and the landowners, an incidentally arising controversy between counsel and client. In the last twenty years there have been hundreds of jury verdicts in federal land condemnation cases. This is the first one in which counsel have sought to impress a lien upon the judgment for their services to the property owners.

As to the claim of Mr. Oxley, he states that when he was engaged to represent the landowners, Mr. Webb and he agreed that his compensation should be a retainer of $500 (which was not paid) and 20% of the net monetary advantage obtained as a result of the trial. He says that on this basis the net amount now due him is $947.80.

Messrs. Custer and Seegmiller say that their oral arrangement for a fee with Mr. Webb was that he should pay them $500 for arguing the motion for a new trial and later he agreed to pay them $750 for the appeal. Mr. Webb's reply to each claim separately, while not artificially drawn and to a large extent unnecessarily discursive and argumentative, nevertheless puts in issue largely the merits of the respective claims.

■ Moreover, I do not think the averments of the claim of either of the attorneys is legally sufficient to establish a lien upon the fund in court. The case is not one in equity where a fund has been created by the efforts of counsel and out of which on purely equitable grounds a court of equity may properly order reasonable compensation paid to counsel out of the fund. This case is not in equity and the fund could hardly be said to have been created by counsel. The inquisition by the jury was merely a determination of the just compensation for the land owned by Mr. and Mrs. Webb. In essence there is nothing materially different in this case from

that of a controversy between an attorney and client with regard to compensation.

The attorneys contend that on general equitable principles the court ought to protect them in the payment of a fee for their services. They say that whether you call their lien "possessory" or "charging" or an "equitable assignment" they should be protected by requiring payment out of the proceeds of the judgment. In this connection it does not appear that the client is insolvent or unable to pay a proper fee when judicially determined as to amount.

 In the present instance it is clear that the attorneys have no "possessory" lien upon the fund; and my understanding of the law with regard to attorney and client is that neither at common law nor by Maryland law, either statute or judicial, or by any federal statute called to my attention, there is any basis for imposing a charging lien upon the fund in this case. The applicable law, both at common law and in Maryland, is well reviewed in a comparatively recent Maryland decision, Ashman v. Schechter, 196 Md. 168, 76 A. 2d 139. In the opinion by Judge Delaplaine, 196 Md. pages 173–176, 76 A.2d at page 141, the law is succinctly stated in the following quotation:

"At common law attorney's liens are of two kinds. One is a retaining lien on all papers, securities and money belonging to his client which come into his possession in the course of his professional employment. This is a general lien which gives him the right to retain such things until all his charges against his client are paid. As the name implies, it is dependent upon possession. It is, generally speaking, a passive lien and cannot be actively enforced either at law or in equity. Robinson v. Rogers, 237 N.Y. 467, 143 N.E. 647, 33 A.L.R. 1291; Reynolds v. Warner, 128 Neb. 304, 258 N.W. 462, 97 A.L.R. 1128. The other lien is a charging lien, which binds a judgment recovered through the attorney's efforts. This lien, which was confined at common law in England to

the taxed costs, was not patterned after any doctrine formulated in other cases, but was based upon the broad principle of justice that an attorney, as a recognized officer of the court, should be paid his fees and expenses out of any judgment obtained as the result of his labor and skill. It was a means invented by the courts to protect attorneys from being cheated by their clients by preventing the clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained. * * *

"In this country there has been a conflict of opinion as to the scope or existence of the charging lien. In Connecticut it has been held that the attorney's lien upon a judgment embraces the taxable costs, and also counsel fees for services rendered in obtaining the judgment, even where there has been no agreement as to the amount he is entitled to charge for his services and the compensation is to be determined upon the principle of *quantum meruit*. Andrews v. Morse, 12 Conn. 444, 31 Am. Dec. 752. In most States, however, it has been held that an attorney has no lien for his counsel fees upon a judgment recovered by him. The conflict probably arose from a misunderstanding of the English system of charging costs. In England the services of barristers were theoretically gratuitous and their fees were honorariums, while the fees of attorneys and solicitors were taxed as a part of the costs and were legally collectible. * * *

"In Maryland an attorney who has obtained a judgment for his client has no lien for an attorney's fee on the judgment which has not been reduced into possession by actual collection, but his claim other than for the taxed costs must be asserted like a claim arising upon any other contract. Marshall v. Cooper, 43 Md. 46, 62; 2 Poe, Pleading and Practice, 5th Ed. sec. 54. The charging lien, as distinguished from the retaining lien, has never been recognized in Maryland.

"It is held almost universally at common law that an attorney who has been

employed by a client to prosecute a suit to secure the title to real property, and who wins a decree therefor, has no lien upon the property for his counsel fees. While there are a few contrary decisions, such as Scott v. Kirtley, 1933, 113 Fla. 637, 152 So. 721, 93 A.L.R. 661, we agree with the overwhelming majority of the decisions that to hold that an attorney has a lien upon real property recovered in an equity suit for his counsel fees would be an unwarranted and dangerous extension of the attorney's lien."

■ In their briefs Messrs. Custer & Seegmiller cite a number of cases from other jurisdictions where, under particular facts of the several cases, a charging lien was established on a fund in court; but it will appear on reading some of these cases that the decisions, while not necessarily based on particular state statutes, seem to have been somewhat influenced thereby. I particularly examined the case of United States v. Hudson, D.C., 39 F.Supp. 797, a federal land condemnation case, but find the facts in important respects different from those in the instant case and, to the extent that the decision in favor of the charging lien is based on general equitable grounds, I do not think it should be applied under the facts of this case where the attorneys' contract for compensation was made in and intended to be performed mostly in Maryland. Thus the Maryland law should apply. Dickinson v. Stiles, 246 U.S. 631, 38 S.Ct. 415, 62 L.Ed. 908. And in passing it may also be noticed that there is no diversity of citizenship between the contending parties. As Mr. Oxley struck out his appearance in the case before the motion for a new trial was filed and thereafter an appeal taken, I do not see the basis for establishing a charging lien upon the fund in the absence of a definite agreement to that effect which is here denied by the property owners.

And as to the claim of Custer & Seegmiller, it could not be said either that they had created the fund or that their services had in fact benefitted the landowners; and in the absence of an express agreement to create a lien on the fund, I do not think it can be established. There was no written agreement from which the court could spell out by construction an equitable assignment; nor was there any entry of the case to the use of either of the claimant attorneys.

■ In their brief Messrs. Custer & Seegmiller argue that whether their claim be called a possessory or a charging lien or an equitable assignment, is immaterial because their right is said to be based on general equitable principles. I do not think that claim can be sustained in this case on any well established principle of equity jurisprudence. Where attorneys have by their efforts created and brought into court a fund for the benefit of numerous persons, as for instance in a class suit, it is customary practice for the court to order reasonable compensation to be paid to the attorneys whose efforts have created a new fund brought into court for equitable distribution. One principle of equity which sustains this is to possibly prevent a multiplicity of many suits by the attorneys against the numerous beneficiaries. But there is no such equity in this case where there is a single client who is, so far as appears, entirely solvent and financially able to respond to any judgment against him by his attorneys for their reasonable and just compensation. In other words, here the attorneys have an adequate remedy on common law principles, and therefore there is no necessity to seek equitable relief.

For all these reasons I have concluded that the motions by the respective attorneys must be and are hereby overruled this 31st day of October, 1958.