A. S. DRAWDY, *et al.,* Appellants, v. W. J. LEONARD, Appellee.

1 So. (2d Series) 178
En Banc
Opinion Filed December 20, 1940
Rehearing Denied March 27, 1941

*Martin & Martin,* for Appellants;

*Ben Shepard,* for Appellee.

BUFORD, J.—Appeal brings for review final decree in favor of plaintiff in a suit to foreclose tax sale certificates. Some of the certificates were issued to plaintiff assignor pursuant to tax sale for delinquent taxes and others were purchased by plaintiff under the provisions of Chapter 18296, Acts of 1937.

The suit to foreclose was based on the certificates issued pursuant to tax sales of 1927 and 1928 which were more than two years old when purchased by plaintiff and plaintiff sought to impress the lien evidenced by certificates issued subsequent to the issuance of those old certificates, though some of the later certificates were not two years old at the date of institution of suit.

Appellant challenges plaintiff's right to do so. That this may be done and in fact should be done, under conditions shown here, is well established in Suassy v. Northern Investment Corporation, 165 Sou. 268, 122 Fla. 265; City of Bradenton v. Lee, 162 Sou. 139, 120 Fla. 100; Northern Investment Corporation v. Mutual Realty Co., 174 Sou. 849, 128 Fla. 374.

The only other question presented by appellant is: "May lessee in possession under agreement to pay taxes upon which tax certificates issued upon said lands for failure to pay taxes in his own name make a valid transfer of said

land to third party as against the title owner?" This statement of the question is inadequate, as it fails to take into account controlling facts. A better statement is submitted by appellee, thus:

"If A, the owner of certain lands, enters into a timber lease with B, by the terms of which lease A agrees to pay three-fourths and B agrees to pay one-fourth of the taxes on said lands subsequently accruing, and by the terms of which said lease each party thereto should have a lien against the interest of the other, for the payment of any taxes which it was the duty of such other to pay, and if thereafter B enters into a sub-lease with C for the whole term, leaving no reversion in B, by the terms of which sub-lease C agrees to pay all of the subsequent taxes, and if during the life of said lease, C purchased State tax certificates covering said lands at a regular tax sale, could D, a purchaser of said tax certificates for value from C, enforce in equity a lien against said lands for three-fourths of the face amount of said tax certificates with interest from the respective dates thereof?"

The record discloses that in 1904 Levi Drawdy, then the owner of the lands involved, entered into a timber lease with George C. Swallow and Louis J. Hopkins. The lease contained a clause providing for the payment of taxes as follows:

"Provided and it is expressly agreed and accepted as part of the consideration of these presents that the parties of the second part, their heirs and assigns, shall and will truly pay one-fourth of the taxes assessed annually against the said lands, for and during the life of these presents, and the party of the first part agrees for himself and his heirs and assigns to pay the other three-fourths of the taxes, and that in the event of the failure of either of the parties to pay the portion of the taxes covered by this clause the other party or parties, heirs or assigns may pay the entire tax

and hold the proportionate part of the party in default as a lien against the interest of the said party and collect the same by process of law, provided, however, that the parties of the second part, their heirs or assigns may apply the portion of the total tax to be paid by them to any specific tract of the said lands which they desire and provided further, that the parties of the second part may at any time release all of the lands in any one of the Townships mentioned herein, from the operation of this contract and thereby be released from the proportionate part of the taxes levied against the said lands.".

Thereafter, and subject to this lease, the lands were conveyed to A. S. Drawdy and thereafter the title was conveyed to Drawdy Investment Co., a Florida corporation. The title appears to be in that corporation during the progress of this suit.

On September 14, 1905, the lessees, Swallow and Hopkins, assigned their interests so that the entire interests of those lessees became vested in one Eddy and Holland and others, who in May, 1928, assigned all of lessees' interests to Brooks Scanlon Corporation. This was in the form of a sublease but it covered the whole term of the lease and left no reversion in the grantors of that sublease. Neither Levi Drawdy nor his successors in title were parties to this instrument. A clause in the lease from Eddy, Holland and others to Brooks Scanlon Corporation provided:

"And the purchaser hereby covenants and agrees to and with the vendors that it will pay or cause to be paid all taxes levied and assessed against the said lands and timber subsequent to the year 1923, so long as said land shall remain in the possession of, and subject to the use of the said Purchaser,

"PROVIDED HOWEVER, that as the timber and trees upon said lands shall be fully removed. from any Township or

Townships of said lands, by the said Purchaser, its successors or assigns, 't or they shall notify the Vendors of the completion of operations, and the releasing of said Township or Townships, and thereupon it shall execute and deliver to said Vendors such release or releases as may be necessary to release such lands from the operation of this Timber Deed."

In July, 1927, and also in July, 1928, L. W. Foley, acting for Brooks Scanlon Corporation and using funds provided by Brooks Scanlon Corporation, purchased at the regular tax sale State tax certificates against the lands involved. Thereafter, Leonard, the plaintiff, purchased the tax certificates from Foley and they were assigned by Foley to Leonard.

Thereafter, Leonard purchased outstanding tax certificates under the provisions of Chapter 18296, *supra*.

On July 29, 1939, Leonard filed his amended bill of complaint in the Circuit Court in and for Brevard County seeking to foreclose the lien evidenced by the State and county tax sale certificates which had been issued to Foley and also the tax lien certificates covering the same lands which had been purchased under the provisions of Chapter 18296, *supra*, and which purchase was made by Leonard less than two years prior to the institution of the suit. When the suit was at issue testimony was taken and a decree was entered declaring a lien in favor of Leonard to the extent of three-fourths of the amount of the certificates acquired by Foley and to the extent of the full price paid to the clerk of the circuit court for the certificates acquired under Chapter 18296, *supra*.

The lower court in effect held that the parties were bound by the terms of the original lease between Drawdy as owner and Swallow and Hopkins as lessees and that under the terms of that contract the lessees and their successors in

interest were entitled when required to pay the full amount of taxes to have a lien upon the lands to the extent of three-fourths of the amount of the taxes so paid and that as the sublease or assignment was for the full term that the sublessees or assignees took with all rights of the original lessees against the owner. This was a correct holding. See C. N. H. F., Inc., v. Eagle Crest Dev. Co., 99 Fla. 1238, 128 Sou. 844; also Tiffany's Landlord and Tenant, page 907; Thompson on Real Property, Vol. 2, page 492.

There was no contractural relation between the landlord and Brooks-Scanlon Corporation. The sublease or assignment to Brooks-Scanlon Corporation operated to create a privity of estate between the landlord and Brooks-Scanlon Corporation, but not a privity of contract between the landlord and Brooks-Scanlon Corporation. See Thompson on Real Property, Vol. 2, page 511.

The record shows that Drawdy paid three-fourths of the taxes for 1924 and 1925. There appears to have been a good reason for the assignees or sub-lessors to Brooks-Scanlon Corporation to insert the clause above referred to in that sublease or assignment contract. That apparent reason is that taxes cannot be paid in parts but when a tax is assessed against lands the party required to pay the tax must pay all the tax and cannot be relieved from the necessity of paying the tax by reason of a contract with some other individual and they were still bound by the terms of the original lease to pay one-fourth of the taxes. The successors in ownership had the right to enforce that provision of the original contract and as those lessees could not in case of delinquency pay one-fourth of the tax and leave three-fourths unpaid, for their own protection, they required Brooks-Scanlon Corporation to agree to pay all taxes. But this did not deprive Brooks-Scanlon Corporation of its rights as a successor under the original lease to hold

the owners for three-fourths of the taxes required to be paid by that corporation and to enforce the lien for such amount against the lands.

In this suit there is no effort to set up title in the lessee or sublessee against the owner but the effort is to enforce a lien upon the lands for the amount of the tax paid by the lessee which the owner was bound to pay and this the sublessee had the right to do.

When the sublessee, Brooks-Scanlon Corporation, acquired the tax sale certificates by payment of the delinquent taxes it was entitled to enforce the lien to the extent of three-fourths of the amount paid against the property upon which the tax was paid. See Chicago Trust Co. v. Knabb, 142 Fla. 767, 196 Sou. 200.

The assignments of the tax sale certificates by Foley who held the certificates in trust for the use and benefit of Brooks-Scanlon Corporation was effectual to assign the right of Brooks-Scanlon Corporation to enforce the lien.

For the reasons stated, the decree is affirmed.

So ordered.

BROWN, CHAPMAN, THOMAS and ADAMS, J. J., concur.