L. KNABB, *et al.*, v. GIDDINGS E. MABRY, *et al.*

188 So. 586.
En Banc.
Opinion Filed May 5, 1939.

*William D. Morgan* and *H. L. Anderson,* for Appellants; *Mabry, Reaves & Carlton & White,* for Appellees.

BROWN, J.—This is an appeal from a final decree rendered by the Circuit Court in and for Baker County on March 14, 1938. The decree found the equities to be with the complainants and held that they were entitled to a lien upon the lands described in the bill for the amount of a

certain sum due them for their services rendered as attorneys in a certain foreclosure suit described in the bill of complaint, in which foreclosure suit the Chicago Trust Company, the plaintiff therein, purchased at Master's sale, for the sum of $50,000.00 the property involved. In said foreclosure decree, it was adjudged and decreed that there was due the complainants the sum of $96,355.98 principal and interest, together with the further sum of $270.00 costs and the further sum of $9,662.59 attorney's fees. Said sums were decreed to be a lien upon said mortgaged property, and ordered the property to be sold after due advertisement, to the highest bidder, and out of the proceeds thereof should be paid, first the costs of court, including the said fees allowed the solicitors for their services; second, the amount adjudged and decreed to be due the complainants, with interest; third, that any surplus should be paid into the registry of the court to abide the further order of the court.

The amended bill in the instant case, which was in substance the same as the original bill, alleged that the amount called for in the decree was not paid and that the lands were duly advertised for sale and sold by the special master appointed in said decree for that purpose, and at said sale were bid in by the attorneys for the defendant in the instant case, the Chicago Trust Company, acting at its request, for the sum of $50,000.00. That said sum was not paid, but the purchaser paid the costs, including the master's fee, and paid to complainants towards their solicitors' fees the sum of $2000.00, and advised complainants that it was purchasing said property as trustee for the estate of Walter E. Flanders, for whom it, the Chicago Trust Company, was acting as co-complainant in said foreclosure, and that the said estate was short of funds at that particular time but that said Chicago Trust Company would pay the unpaid por-

tion of the fees so adjudged and decreed to be paid to complainants within a short time. That relying upon this, complainants procured a confirmation of said sale to the Chicago Trust Company and a Master's deed to be made and recorded conveying said property to said Trust Company, one of the complainants in said suit. That said Trust Company acquired the title to said lands by virtue of the Master's sale charged with the obligation to pay the attorney's fees therein described and that said amount is and should be a first charge on said lands.

It is further alleged that the Chicago Trust Company was succeeded by Central Republic Trust Company, which acquired all rights and assumed all obligations of the Chicago Trust Company in so far as they relate to the lands and obligations herein described, including the obligation in behalf of complainants; that the Central Republic Trust Company afterwards went into the hands of receivers and Charles Albers was duly appointed receiver of said Trust Company and was acting as such at the time the amended bill was filed. It is further averred that complainants have long been entitled of right and of equity to payment for their said services and are now entitled to payment for the same out of the lands described in the bill, which comprised some 31,000 acres of land in Baker County; that the work in question was undertaken by complainants with the understanding with said Trust Company that the property involved in said suit would be responsible for the payment of fees for complainants, and prayed that the court adjudge and decree that the defendants hold the title to said lands as Trustees for the benefit of complainants to the extent of the indebtedness therein described, charged with the duty and obligation to pay complainants said sum with interest and that said amount be decreed a first lien on said property subject only to taxes and that the defendants,

Chicago Trust Company, Central Republic Trust Company and Charles H. Albers, as Receiver for Central Republic Trust Company, be ordered to pay the same by a short day named by this Court and that failing to pay the same the said property be ordered and decreed to be sold by a Special Master to be named by the Court, or so much thereof as is necessary to pay the said sum due to complainants together with the costs of said proceedings.

On motion of L. Knabb, he was permitted by the court to intervene and be joined as party defendant in said cause. Motions to dismiss the bill of complaint were interposed and denied.

The original defendants led an answer in which they alleged that they had no interest in the property other than as Trustees and Successor Trustees respectively under the will of Walter E. Flanders. In this answer these defendants alleged that the claim did not accrue within three years of the commencement of plaintiff's action, was barred by the statute of limitations and that the plaintiffs were guilty of laches in prosecuting the claim.

The defendant L. Knabb filed an answer in which he claimed he was a bona fide purchaser for value of the title, both real and equitable, of the defendants, Chicago Trust Company and Central Republic Trust Company, the two Trust Companies above named, as trustees under the will of Walter E. Flanders, and Central Republic Trust Company successor by consolidation to Chicago Trust Company in the property described in the plaintiffs' bill of complaint, and that at the time of making said purchase, he had no notice either actual or constructible of any claim of the plaintiffs against said property.

Defendant Knabb further alleged that in December, 1931, the Central Republic Bank and Trust Company as Trustee under the will of Walter E. Flanders executed a note in

the sum of $90,000.00 which pledged the land described in plaintiffs' bill of complaint for the prompt payment thereof and that another note was executed in January, 1932, by said defendant in the sum of $19,330.00, of the same tenor as the first, and that both of said notes had been assigned to the Reconstruction Finance Corporation. That this defendant in July, 1936, agreed to purchase said notes from the Reconstruction Finance Corporation and paid a part of the purchase price of the same, and that he is now and has since been in possession of said lands and that at the time of said purchase he had no notice of plaintiffs' claim. Further that he had paid all outstanding taxes against that property, except for the year 1931, up to date. Also that plaintiffs were guilty of laches in that their claim was filed in 1927 and no further action was taken thereon until 1936. That said answer further alleged that plaintiffs cause of action was based upon an oral promise to pay for work during the year 1927 and that the cause of action did not accrue within three years of the commencement of plaintiffs' suit. Further that the Chicago Trust Company had no right or authority to bind the estate of Walter E. Flanders for said attorneys' fees or to make the property of said estate subject to a lien therefor.

In April, 1937, the complainants filed their amendment to the bill of complaint as amended in 1936 in which they alleged that, on October 29, 1928, the Chicago Trust Company had entered into a lease with L. Knabb, covering the lands subject to this suit, by which said lease the defendant, Knabb, for a stated consideration, acquired certain turpentine, saw mill, cross-tie, cord-wood and pole rights, to which lease a supplement was added in November, 1929. That by said lease and supplement the said Knabb had agreed to pay certain amounts per cup-face on trees, and for lumber manufactured from timber cut and removed from said

lands, etc., and that Knabb had not paid the money according to said agreement and was owing large sums thereon, and alleged that complainants', having a prior claim in the land, are entitled to have an accounting on the part of Knabb.

All the defendants filed a motion to dismiss the amended bill of complaint on May 1, 1937, on the grounds hereinabove referred to, for want of equity, and also alleging that the action had been abated for want of prosecution. This motion was denied.

A Special Master was appointed and testimony was taken and documentary evidence adduced before him. After considering the evidence and the testimony the chancellor rendered a decree in favor of the complainants as hereinabove indicated.

It appears from the evidence that after the foreclosure sale in 1927, complainants requested that a mortgage be given them by the Chicago Trust Company, the purchaser at the foreclosure sale, to secure their unpaid fees, and that the representative of said purchaser wrote them that they were entitled to a line on the property for their attorneys' fees, but requested that the estate for which the purchaser was acting as trustee be not embarrassed by being required to give a mortgage, and suggested that suit be filed asking the court to declare a lien, but that such suit be not followed up; that the attorneys observed the request of said trustee-purchaser, which also said in the same letter: "Of course, in regard to your fees, you understand that we will take care of you if at all possible from this end without the necessity of pursuing your recourse against the property," and that after filing their original bill in 1929, said attorneys therefore allowed the suit to lie in suspense for seven years, during which time their fees were not paid.

The original bill filed by the complainants against the

Chicago Trust Company, *et al.*, for the purpose of having a lien declared in their favor upon certain lands for their solicitor's fees was filed on December 16, 1929, and that the suit was allowed to remain dormant until September 23, 1936, when complainants filed their amended bill of complaint and prosecuted the same successfully to a final decree rendered on March 14, 1938. As above shown, this decree was in favor of the complainants and it also found that the defendant L. Knabb was not a purchaser of said property as alleged in his answer and that he had no interest in same, except as appears by the lease and supplement thereto, and stated that no adjudication was made in the decree of 'claims arising by reason of the payment of taxes or the acquisition of tax certificates by said defendant Knabb. The decree also denied the accounting asked for by the complainants as against Knabb, holding that the court deemed the same unnecessary.

It might be noted also that the evidence, as well as the answer of the several defendants, tended to show that the Chicago Trust Company bought in the property at the foreclosure sale in 1927 as Trustee, and that Chicago Trust Company afterwards merged with the Central Republic Trust Company, which later became insolvent and is being wound up through a Receiver, said Albers. It is stated in the briefs that the last named Company is the one to which the Reconstruction Finance Corporation made a loan of $90,000.00, "it being the so-called Dawes Bank."

We are of the opinion that no reversible error has been shown and that the decree of the chancellor here appealed from must be affirmed upon the authority of the case of Scott v. Kirtley, 113 Fla. 637, 152 So. 721, which case settles in favor of the appellees the controlling question raised by this appeal. In that case it was said:

"The bill of complaint, as we construe its allegations, is

not a bill brought to enforce a lien that is claimed to have arisen on the land as a result of the services rendered by the Attorney to the owner in recovering it for her. On the contrary the bill appears to be predicated upon an asserted equitable lien, for the reasonable value of the attorney's services, impressed upon the land recovered as a direct result of those services, and thereafter to have such equitable lien enforced against the property involved.

"We are not unmindful of the point strenuously urged before us, both in the briefs and during the oral argument, *that at common law* an attorney has no lien upon an estate recovered for a client, but only on papers in his hands.

"But in this case, we are not asked to either recognize or enforce any common law lien. On the contrary, the claim is for an *equitable* lien.

"Such an equitable lien, complainant asserts should be decreed in this case in his favor for the amount of his attorney's fees, because of the equities that he asserts have arisen out of his relationship with the defendant, his client, and the relationship of his professional services with the defendant client's property that has been made the *rem* of the instant suit.

"As has been well stated in 17 Ruling Case Law, par. 14, page 605, in discussing equitable liens:

" 'Even in the absence of an express contract a lien based upon the fundamental maxims of equity, may be implied and declared by a court of chancery out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.' "

And again further on in the opinion it is said:

"We are of the opinion that where, as the result of services rendered by an attorney at law in suing for and recovering for his client certain real estate, the client has realized the real estate as fruits of the attorney's professional

services, under an express or implied understanding on the part of both attorney and client, that a reasonable attorney's fee would be charged, and would of necessity be payable out of the property realized by the client as a result of the successful efforts of the attorney in litigating for it, that even in the absence of any express contract for a definite amount of fee, an equitable lien, based upon the fundamental maxim of equity, that no one shall be unjustly enriched at another's expense, may be implied and declared by a court of chancerey, out of general considerations of right and justice which must be applied to the relations of the attorney and client with reference to the fruits of the transaction, and the circumstances of their dealings with each other, with the understanding that the services of the attorney would be payable out of what the client should realize as a result of the successful efforts of the attorney: 17 R. C. L., page 605, par. 14; Graeber v. McMullin, 56 Fed. (2nd) 497; Certiorari denied by United States Court in 287 U. S. 603, 56 Sup. Ct. 9, 77 L. Ed. 19."

Further on, in quoting with approval from the opinion in Fillmore v. Wells, 10 Colo, 228, 15 Pac. Rep. 343, the following appears:

"The Attorney's lien, whether under the statute or at common law, is equitable in its nature. Even the decisions in this country, which confine its existence and application to the narrowest limits, always speak of it as an equitable lien, right or privilege. It is not property in the thing which gives a right of action at law. It is a charge upon the thing which is protected in equity. Courts of law may recognize it when the *res* is in possession of the lienor and the owner is seeking to deprive him of possession. But where the thing is not in possession, and some affirmative action is required by the attorney, he, like other lien claimants, must seek relief in equity. * * * since a court of equity

is the only forum that can enforce by proper decree the lien rights, we are of the opinion that this is one of the cases wherein such court may take and retain jurisdiction for all purposes."

See also 6 C. J. 766, 37 C. J. 312; 2 R. C. L. 1069; Higley v. White, 102 Ala. 604, 15 So. 141.

We have considered the contentions of the attorneys for appellant Knabb in regard to waiver of lien laches and estoppel, but we do not consider their position tenable. It is true that the appellants in the court below had requested a mortgage from the purchaser at the foreclosure sale, to secure them for the balance due on their fees, but the letter from the purchaser to such attorneys explains why the mortgage was not given, that is, because the purchaser expressly recognized the right of the attorneys to, and that said attorneys had, a lien upon the land, which the courts would give effect to and enforce, and objected to the giving of a mortgage because it might embarrass the administration of the trust at that time.

It is well settled that the conclusion of the chancellor upon the facts will not be disturbed by this court, unless they are clearly erroneous. The latter cannot be said of the decree in this case. It appears to us to be well founded upon, and justified by the leadings and the evidence in the case.

In the light of all the facts disclosed by the record, as well as the authorities hereinabove cited, we are clearly of the opinion that the decree of the court below should be and the same is hereby affirmed.

Affirmed.

TERRELL, C. J., and WHITFIELD, BUFORD, CHAPMAN and THOMAS, J. J., concur.