CHICAGO TRUST COMPANY, *et al.,* v. L. KNABB

196 So. 200
Division A
Opinion Filed May 21, 1940
Rehearing Denied May 31, 1940

768

*Mabry, Reaves, Carlton & White* and *William H. Frecker,* for Appellants;

*H. L. Anderson,* for Appellee.

BUFORD, J.—In an amended bill of complaint to foreclose tax certificates it was alleged that the complainant was the owner and holder of such tax certificates, all of which had been acquired by him for valuable consideration. The amended bill of complaint contains the following allegations:

"8. Plaintiff further shows to the court that about the year 1927, Chicago Trust Company became vested with the legal title to the lands involved in this cause, and that so far as the public records of Baker County, Florida, show, said Chicago Trust Company is now the owner of the record title to all of said lands, and was such at the time of the institution of this suit; that on the 29th day of Oct., 1928, Chicago Trust Company made and delivered to the plaintiff, a lease of the above described lands for naval stores and other purposes, an exact copy of which is attached hereto and made a part hereof, marked plain-

tiff's Exhibit No. 3. That it was then and since the duty and obligation of defendant Chicago Trust Company to pay the taxes assessed against said lands each and every year after the date of said lease; that in the year 1931, and prior thereto, said Chicago Trust Company became, and was, involved in great financial difficulties, and that while plaintiff was engaged in the business of using pine trees upon said lands for the extraction of oleo-resin, to-wit before the month of June, 1931, the Sheriff of Baker County, Florida, informed the plaintiff that the plaintiff could not continue to work the trees standing upon said lands for naval stores purposes, or cutting and removing timber therefrom until the taxes then in arrears were paid, and threatened to proceed by arresting plaintiff in the manner provided by statute in the State of Florida to prevent plaintiff working and using the pine trees, or cutting or removing any timber from the lands aforesaid unless and until said taxes in arrears had been paid. In this situation, the plaintiff demanded from the Chicago Trust Company that it supply monies sufficient to pay the said taxes so in arrears; that Chicago Trust Company, then being the owner of the legal title to said lands, then and there informed the plaintiff that it was unable to supply moneys to pay said taxes and instructed plaintiff to protect himself, and the plaintiff shows that plaintiff was advised that the only way he could protect himself was to buy outstanding tax certificates as same were issued, being forced to do so by the demands of said Sheriff in order to continue plaintiff's business; that afterwards plaintiff purchased tax certificates as the same were issued, and that at a later date J. D. Dugger, as the agent for plaintiff, purchased other of said certificates as herein averred, which were afterwards assigned by the said Duggar to the plaintiff, and so it is plaintiff shows:

"(a) That it was the duty of Chicago Trust Company to pay said taxes, and that plaintiff was not, by the terms of said lease, obligated in any manner to pay taxes assessed against said lands.

"(b) That the Chicago Trust Company was unable to pay the same, either in the year 1930, or since.

"(c) That Chicago Trust Company and Central Republic Trust Company became, and were, and at all times since wholly unable, or unwilling to pay said taxes.

"(d) That plaintiff purchased certificates which were and which later became outstanding and paid the taxes assessed for the years 1935 by and with the knowledge and consent of his landlord, the said Chicago Trust Company, and with the knowledge of the defendant Central Republic Trust Company, and with knowledge of all of the defendants. That defendants abandoned said lands because of their lack of ability to pay the taxes lawfully assessed upon and against said lands or because they were unwilling to pay said taxes."

The record shows that the defendants are the successors in title and interest to Chicago Trust Company and the record further shows that Chicago Trust Company held the title to the lands involved in trust. Whether the document denominated a lease by the complainant in this suit was in fact a lease, or a mere license, is not material to be determined here because the complainant in the allegations of his bill of complaint, *supra*, has taken the position that it is a lease and, for the purpose of this suit, he will be bound by that position.

To the amended bill of complaint the defendant Duner as successor-trustee filed his answer denying that the lessor had breached the lease by failing to pay taxes, but averred that Knabb, the lessee, had failed to pay the rent due by him under the terms of the alleged lease and that the lessor,

being a trustee, was thereby rendered unable to pay taxes and alleged that Knabb had taken the products of the land for many years without making any reports or payments under the terms of his alleged lease, and prayed that an accounting be ordered, and that the balance due the trustee for the use of the lands by Knabb, after crediting Knabb with the amounts paid by him for taxes, should be ordered paid to the trustee.

The answer further averred that the lease had been terminated and prayed a decree accordingly.

Mabry, Reaves and Carlton filed a separate answer similar to that of the trustee, but claiming no right to a decree against Knabb for any surplus that might remain due the trustee.

Then Duner filed his second amended answer wherein he set out fully the explanation as to how the lands were acquired by Chicago Trust Company, alleged that the lands were held by the Chicago Trust Company as trustee, although such fact was not shown on the face of the conveyance to that company. He showed the various successions in trust, coming down to him. He averred in effect that all of taxes paid on tax certificates acquired by Knabb were so paid or acquired for the use and benefit of the lessor; that it was Knabb's duty under the lease to report and make payments according to the terms thereof, but that he ceased doing so in 1930 and owed the trustee large sums of money. He prayed,

"(a) A full accounting of all products taken from the lands.

"(b) That plaintiff be required to surrender possession and vacate the lands.

"(c) That a personal decree be rendered against the plaintiff for the amount found due the trustee on accounting.

"(d) That accounting involve a proper allowance of interest.

"(e) That the lease be declared to have been terminated.

"(f) That a lien be impressed, as provided in the lease, upon plaintiff's personal property to secure the amount found due the trustee.

"(g) That the title to the lands be quieted and confirmed in the trustee.

"(h) That the plaintiff be required to pay attorneys' fees."

Mabry, Reaves & Carlton filed a similar amended answer and, in addition thereto, set out the status of their suit for attorneys' fees (See Knabb, *et al.*, v. Mabry, *et al.*, 137 Fla. 530, 188 Sou. 586) and showed that the circuit court had rendered a decree in that suit in their favor from which Knabb had appealed.

After motion to strike had been interposed with motion to dismiss the counter-claim included therein, Mabry, Reaves & Carlton filed an amendment to their second amended answer in which they amplified the averments of the answer to the effect that the lands involved are of little or no value except for timber thereon; that they were principally cut-over lands; that the existence of timber is a second growth; that the lands were not of sufficient value and could not be sold for enough to pay the amount adjudged to be due them and, therefore, unless the court required Knabb to make an accounting and charge him with the amounts due by him under the terms of the alleged lease to the alleged lessor as a set-off against the taxes which Knabb had paid, the answering defendants would be unable to collect in full the amounts decreed to be due them.

On February 21, 1940, a further amendment to the answer was filed by Mabry, Reaves & Carlton averring, in

effect that pending the suit the decree in the former suit awarding attorneys' fees to them had been affirmed by the Supreme Court, and the lands had been sold thereunder and purchased by O. K. Reaves and conveyed to him by deed dated July 5, 1939, and that in and by said judgment, so affirmed as reported in 188 Southern 586, it was adjudicated that the said Knabb had no interest in or title to the said lands, legal or equitable, except whatever rights he might have under the lease or under his tax certificates, which the court did not adjudicate in said cause; that the master's deed conveys the said lands to O. K. Reaves without reservation; that the property sold for much less than the amount decreed to be due said defendants, and that there is still owing to them on said decree approximately $12,000; further that on May 15, 1929, the said court rendered a decree for unpaid taxes upon said lands against the Chicago Trust Company and in favor of Ernest Amos, as State Comptroller, and W. C. Thompson, as Clerk of the Circuit Court of Baker County; that said decree was unpaid and the lands were also sold under said decree and purchased by O. K. Reaves and conveyed to him by deed dated July 5, 1939; that plaintiff had full knowledge of said sale and conveyances, and plaintiff was then and had been for some months, unknown to said defendants until right recently, stripping the land of wood and stumps, and was continuing to work it for turpentine purposes; that vast quantities of wood, stumps and turpentine had been taken from the lands since the title was acquired by O. K. Reaves, who held for the benefit of himself and the defendants Mabry and Carlton; that the lease had expired as to all the lands according to the testimony of the plaintiff Knabb, who swore that all the cups which the timber would take were placed thereon in 1929 and 1930; that the lands

were chiefly—in fact, almost entirely—valuable for its timber and timber products.

In this amendment they prayed for relief in part as follows:

"(a)   For a temporary injunction to prohibit the plaintiff from taking further timber products from the land.

"(c)   That the court determine and decree that the said lease and supplement had expired.

"(d)   That the court determine and decree the value of timber products taken from the lands since July 5, 1939, the date it was acquired by said defendants, and require the said Knabb to pay the said sum to O. K. Reaves.

"(f)   That attorneys' fees be assessed against Knabb, according to the terms of the lease.

"(g)   That, to secure such payments, the lien given by the lease upon the personal property of the lessee thereon be enforced.

"(h)   That Knabb be required to specifically perform his obligation in the lease to give a reasonable release or quit-claim deed, in order the public records may be made to show that the lease has expired or been terminated."

A temporary restraining order was granted but afterwards final decree was entered in which affirmative relief other than for the protection of the property was denied.

In that decree, among other things, the court found:

"2.   That the equities of this cause, on the bill of complaint, are in favor of the plaintiff and against the defendants. That the equities of this cause on the counterclaim of the defendant, Duner, are in favor of the plaintiff and against the defendants, except as otherwise specifically found and decreed herein.

"3.   That the defendant Duner acquired title to the lands described in the bill of complaint as successor trustee, pending the suit, and for that reason was allowed to come

in as a defendant herein; that he has filed answer and counterclaim praying for an accounting for rents alleged to be due from the plaintiff for the use of said lands, under the lease referred to in the bill of complaint, and that a lien be decreed against certain personal property described in his counterclaim but not made the subject matter of the bill of complaint, as to any amounts found to be due, and for other relief;

"4. That it has been made known to the court by counsel that subsequent to the filing of said answer and counterclaim, but prior to final hearing, said Duner, as trustee, has been divested of the title of said lands by judicial sale under a decree of court impressing a lien for attorney's fee upon lands in favor of the defendants, Mabry, Reaves & Carlton, subject, however, to plaintiff's leasehold rights in said lands, *and subject to taxes.* (See Knabb, *et al.,* v. Mabry, *et al.,* 188 So. 586.)

"5. That Duner predecessor trustees having breached the covenants of the lease referred to in the bill of complaint by failure to pay taxes on the lands described in said bill of complaint for 1930, said lands were sold to the State of Florida for non-payment of taxes; that to protect his rights under the lease plaintiff was obliged to and did buy said tax certificates on said lands from the State of Florida, and took an assignment thereof on November 20, 1931; that at the time he made said purchase, plaintiff, as lessee, was not in arrears in the payment of rents;

"6. That in September, 1933, after the purchase of said tax certificates in 1931, plaintiff agreed with Duner's predecessor trustees to pay taxes on said lands lawfully assessed for 1932, in the amount of $1,910.48, and to credit against said amount so paid an item of $1,655.46 then due and owing from plaintiff to said predecessor trustees for timber cut by plaintiff under the aforesaid lease. The said

item of $1,655.46 should be set off against said tax payment of $1,910.48; and plaintiff should have included in his recovery herein the balance of $255.02, with interest thereon at the rate of eight (8) per cent, and the same should constitute a lien against all the real property described in the bill of complaint;

"7.  That except as to the said item of $1,655.46, Duner has failed to prove any agreement on the part of plaintiff to pay the taxes covenanted to be paid by the lessor, and to set them off against rents in this action;

"8.  That the estate for which Duner is acting as successor trustee, is insolvent and without assets; that there is nothing in the record to indicate otherwise than that the plaintiff Knabb is wholly insolvent;

"9.  The question arises whether or not the court, having found with the defendant Duner on a portion of the claim set up in his counterclaim, to-wit:  The aforesaid claim of $1,655.46, should attempt to settle and adjudicate all of the rights, or claims, of the parties hereto.

"The court is of the opinion that complete justice cannot be done between the parties by following such a course of procedure, for the reason that the record indicates that the plaintiff may have valid claims and demands against the estate, extraneous of his tax liens, which he would have the opportunity of asserting in an independent action brought by Duner for rents allegedly due, but which he would be precluded from asserting in this action, there being no provision of law allowing a plaintiff to incorporate in a reply to a defendant's counterclaim, a counterclaim on his own behalf.

"For this reason, and except as to the aforesaid item of $1,655.46 herein allowed the defendant Duner as a set-off said defendant's counterclaim should be dismissed, without prejudice, however, to defendant's right to institute such

appropriate proceedings in such proper forum as he may be advised, at which time plaintiff may have full opportunity to assert any proper claims or demands which he may have, against the claims and demands of the said Duner."

Appeal is from the decree. We hold that the decree was erroneous in that it found the equities in the cause to be with the plaintiff and against the defendant and thereby disallowing the defendant's set off and counterclaim.

The plaintiff is estopped under his pleadings to deny that he was, at the time of the purchase of the tax certificates, the tenant of the party holding title as trustee. The fact that the personnel of the trustees was changed from time to time could have no effect on the rights of the parties. The successor trustee in each instance succeeded to all the rights obtaining between the predecessor trustee and Knabb.

It, therefore, follows as an established principle that Knabb could not acquire any more by purchasing tax certificates than he could have acquired by paying the taxes and the extent of that right would be a lien on the property for the amount paid for taxes. And this is true although Knabb may not have been in default in his payments under the terms of the alleged lease at the time he paid the taxes. When, however, he continued to use the lands and remove timber and timber products therefrom under the terms of the lease and failed to pay therefor as was provided for in the lease, he became bound to credit his landlord the amounts thus accruing against the amount which he had paid for the benefit of the landlord for taxes. See Harbeson Lumber Co. v. Geneva Mill Co., 116 Fla. 342, 156 Sou. 710. Also see Williams v. Towl, et al., 65 Mich. 204, 31 N. W. 835; Morris v. Apperson, 11 Ky. 838, 13 S. W. 441, and Jackson v. King, 82 Ala. 432, 3 Sou. 232; Gorton, et ux., v. Paine, 18 Fla. 117; Brown, et al., v. A. N. B. and L. A., 46 Fla. 492, 35 Sou. 403.

This case is not ruled by the opinion and judgment in the case of Armstrong, *et al.*, v. Wilcox, 57 Fla. 30, 49 Sou. 41, because in that case it is shown that the tax certificates upon which a deed was issued were acquired by the grantee in the tax deed prior to the commencement of the tenancy and the lessor was put on notice that the lessee intended to exercise his rights under the prior acquired tax sale certificates.

It is contended that in the instant case Knabb was under no obligation to pay the taxes or to redeem the certificates under the terms of the alleged lease. But the use of the premises for the purposes contemplated by the alleged lease was for the severing and removal of timber and timber products and the lessee was upon notice of the statutory requirements that the payment of taxes was a prerequisite to the use of such lands for such purpose. See Sections 5278 and 5279 R. G. S., 7397 and 7398 C. G. L. He therefore took the alleged lease with the privilege of using the lands for such purpose *cum onore.*

It is contended here, as it was contended in the court below, that counterclaim could not be maintained in this action because it did not arise out of the transaction which is the subject matter of the suit (see Sec. 35 of Fla. Chancery Practice Act), the contention being that the subject matter of this suit was the foreclosure of the tax certificates. However, the record shows that the subject matter of the suit is primarily the rights of the complainant which grew out of the alleged lease and right to use for the purpose designated the lands upon which the certificates were issued. The complainant alleged in effect that after becoming the lessee of the owner and while using the lands for the purposes contemplated by the lease, it became necessary for him to redeem the certificates and pay certain taxes, so that he might lawfully continue such use of the

premises under the alleged lease and that he did redeem the certificates and pay the taxes for the purpose of protecting his rights under lease and he does not even allege that he paid the certificates and paid the taxes for the purpose of acquiring a title adverse to his landlord.

It is too well settled to require citation of authorities in support of the enunciation that when equity has assumed jurisdiction it will settle all related matters in controversy between the parties. The complainant admits that he took the timber and timber products from the lands for many years without paying therefor under the terms of the alleged lease or otherwise except by the payment of the taxes here involved. If he intended to set up an adverse claim because of these tax certificates it was his duty then to so advise the landlord and put the landlord on notice that such was his purpose. This he did not do. Certainly, under the facts disclosed by the record the complainant had the right to pay the taxes and to take credit for the amount thereof against whatever he might be obligated to pay to the landlord for the timber and timber products which he took from the land. This is in equity and good conscience what he should have done, unless he had chosen to surrender possession and stand upon the lien evidenced by his tax certificates.

The equity rule, that he who comes into a court of equity must come with clean hands, applies in this case because it cannot be said that the complainant's hands are clean unless he is willing to do equity, and to do equity in this case he must account to the owner for that which he is due the owner under the terms of his contract and which amounts should have been credited as they accrued on the amount paid for taxes and tax certificates. Equity will require that to be done which in equity and good conscience should have been done.

In arriving at the net amount due by one party to the other interest on balance found to be due at stated periods should be calculated at the rate of 8 per cent per annum.

Whether or not complainant is entitled to a decree for attorneys fees depends upon whether or not a balance is found to have been due the complainant at the date of the institution of the suit.

For the reasons stated, the decree is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

So ordered.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, P. J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.