**W. G. WARD and H. F. WARD, trading and doing business as WARD & WARD, v. THOMAS H. FORDE, a single man, and AIMEE B. FORDE, a feme sole.**

17 So. (2nd) 691
April 25, 1944
Rehearing Denied May 17, 1944

January Term, 1944
Division A

*Ward & Ward* and *Worley, Gautier & Cannon,* for appellants.

*J. H. Mercer,* and *L. J. Cushman,* for appellees.

CHAPMAN, J.:

The City of Miami Beach, during the latter part of 1930, adopted Zoning Ordinance No. 289 pursuant to the several provisions of Chapter 9837, Special Laws of Florida, Acts of 1923. The ordinance affected Block 1 (and other lands) situated in Second Ocean Subdivision of Miami Beach. Block 1 has a 1500 foot frontage lying between the Atlantic Ocean and Collins Avenue with an average depth, when originally

platted, of approximately 240 feet, but erosion, ocean currents, hurricanes and other elements materially reduced over the years the depth of the ocean strip. The terms and conditions of the Zoning Ordinance restricted the uses of Block 1, *supra,* to single family estates.

Prior to June 22, 1938, Thomas H. Forde and wife, Aimee B. Forde, owned by the entireties, Lots 40, 41, and 42 of Block 1 of Second Ocean Subdivision (being a part of the aforesaid 1500 feet frontage) and concluded that the zoning ordinance as applied to their property was unreasonable, arbitrary, confiscatory and unconstitutional; that no demand existed for private estate uses; the annual assessment of taxes was based upon a high valuation and the cost of carrying the property was prohibitive; the restrictions imposed by the terms of the ordinance placed on the property an unpredictable future; that the money placed in the lots by them would be a total loss because of the limited restrictive uses of the property, but if the restrictions of the zoning ordinance were altered or changed from single family estate uses so as to permit the construction thereon of multiple family dwellings or hotels, then their original investment in the purchase price of the lots, *supra,* would not only be a sound but a profitable investment.

Thomas H. Forde, early in 1938, contact and engaged the professional services of the legal firm of Stapp, Gourley, Ward & Ward, of Miami, Florida, for the purpose of obtaining a court decree cancelling of record and removing the objectionable restrictions imposed by the zoning ordinance to the lands, *supra,* owned by the entireties on the part of Thomas H. Forde and wife, Aimee B. Forde. The terms and conditions of employment of the firm by the Fordes, as well as the handling of the litigation, were had through attorney W. G. Ward. He conducted on behalf of his firm not only the litigation in the lower court, but prepared the record, perfected the appeal, filed briefs and orally argued at the bar of this Court the cause on appeal.

On April 23, 1938, W. G. Ward, in behalf of his firm, outlined in a letter addressed to Dr. T. H. Forde the terms and conditions under which this firm would accept employ-

ment and undertake the responsibility of obtaining a court decree cancelling and removing the restrictions to the Forde lots, *supra,* imposed by the ordinance. Pertinent parts of the letter are viz:

"There are two ways in which fees could be computed. If you are planning on selling this property immediately then we could consider a reasonable retainer and a contingent fee of a certain percentage of the difference between what the lots would be worth unencumbered as against what they are worth now with the zoning ordinances against them. Since, however, you are planning to use the property yourself that could not be definitely determined. We have never undertaken one of these cases under $2500.00 guaranteed fee. In some instances they have run higher than that amount. However, in those cases there were numerous defendants involved and in this particular case *only the City of Miami would be defendant.* Under the conditions above set forth we would be willing to undertake this litigation on the following basis: for the lower court litigation a fee of $1,000.00 to be paid $500.00 retainer, $250.00 when the master's report is filed at the close of taking testimony, and $250.00 upon the entry of the final decree. Regardless of whether you win or lose the case in the lower court this case would no doubt be appealed and if it is our fee would be $500.00 for representation in the Supreme Court, plus traveling expenses in the approximate amount of $65.00 in the event the Supreme Court granted oral argument.

"The above mentioned fee would be solely for our services and in addition thereto you would have to take care of the court costs, sheriff's fees for services, special master's fee for taking the testimony and a court reporter's services in making up the record and attending the hearings and taking the testimony. . . .

". . . We would naturally expect your assistance on the testimony in view of your familiarity with the section involved." (Emphasis supplied).

The terms of employment expressed in the letter, *supra,* were acceptable to and approved by Dr. T. H. Forde, and, pursuant thereto, suit was instituted by the aforesaid firm

in behalf of Thomas H. Forde and wife, Aimee B. Forde, against the City of Miami Beach in the Circuit Court of Dade County, Florida. The suit was in chancery and sought a final decree which would remove and cancel of record the restrictive uses imposed by the terms of the ordinance against Lots 40, 41 and 42 of Block 1 of Second Ocean Subdivision owned by Thomas H. Forde and wife, Aimee B. Forde, by the entireties. The chancellor below, on August 30, 1938, heard a petition and entered an order permitting and allowing intervention in the cause by other parties owning lands located within the zoning area. Thus the order not only increased the number of parties to the suit, but Lots 23, 24, 25, 26, 27, 28, 29, 33, 34, 38, 39, and the South 25 feet of Lot 35 in Block 1, and many other lots situated in Blocks 3 and 7, similarly affected by the restrictions of the zoning ordinance and situated in the same subdivision, were not considered or contemplated by the Fordes or their counsel when the letter of April 23rd was written, received and acted upon.

The issues having been made by the pleadings, the cause was then referred by the chancellor below to a special master, who held approximately thirty hearings, and each thereof was attended by Thomas M. Forde and wife, Aimee B. Forde. Numerous witnesses in behalf of the plaintiffs, defendants and intervenors appeared, testified and were examined and cross examined by counsel engaged in the trial of the cause. A large number of Exhibits consisting of deeds, ordinances, sketches, drawings, blue prints, photographs, etc., were adduced before the special master as evidence for the respective parties. The record certified to this Court consists of 1,071 pags and is reported under the name of Forde, et al., v. City of Miami Beach, 146 Fla. 676, 1 So. (2nd) 642.

The cause was submitted to the chancellor for final hearing on (1) the bill of complaint (2) bill of intervention of the several intervenors; (3) answer of the defendant to the bill of complaint; (4) answer of the defendant to the bill of intervention; (5) the report of the special master; (6) exceptions filed to the Master's report; (7) exceptions filed by the intervenors to the Master's report; (8) the testimony; and (9) the argument of counsel for all interested parties;

and on September 27, 1939, a final decree was entered finding the equities of the bill of complaint against the Fordes and in behalf of the City of Miami Beach, and plaintiffs' bill of complaint on the aforesaid hearing was dismissed. On March 25, 1940, an appeal was taken by Thomas H. Forde and wife, Aimee B. Forde, from the final decree to the Supreme Court of Florida.

Domestic trouble developed between Thomas H. Forde and wife, Aimee Forde, resulting in a divorce on December 9, 1941. The title to the property here involved passed to Aimee B. Forde under the terms of the divorce decree. A receiver had been previously appointed and was in possession of the property and neither of the Fordes assisted counsel in financing the appeal to the Florida Supreme Court. The costs of the appeal here were paid by counsel (W. G. Ward) and the costs later taxed against the City of Miami Beach, resulting in a return to him of costs previously advanced.

During the month of May, 1942, Aimee B. Craft (formerly Aimee B. Forde) died intestate, leaving as her sole heir at law John Dee Craft, a minor. Jessie Chisebro was by an order of the County Judge's Court of Dade County, Florida, duly appointed administratrix of the estate of Aimee B. (Forde) Craft, deceased. An order of revival was entered in the cause by the Circuit Court of Dade County, Florida, on the theory that an administratrix, under the Florida probate law, has possession of real estate and the power to sell and convey a fee simple title thereto. John Dee Craft, a minor, was through his guardian made a party. A lis pendens notice describing the property was filed in the cause in the clerk's office of Dade County, Florida.

On January 14, 1942, Ward & Ward, surviving members of the legal firm of Stapp, Gourley, Ward & Ward, filed their bill of complaint in the Circuit Court of Dade County, Florida, against Thomas H. Forde and Aimee B. Forde, a feme sole, and the latter's legal representative subsequently was made a party. The bill of complaint details the professional services rendered the Fordes in obtaining a decree cancelling and removing restricted uses of described property imposed by a zoning ordinance of the City of Miami Beach.

The bill of complaint refers to the letter dated April 23, 1938, addresed to Dr. Forde and admits payment of certain sums by Dr. Forde to Ward & Ward under the provisions of the letter. That a reasonable fee for the services rendered should be decreed and previous payments made duly credited against the amount. That a lien be decreed therefor against the property involved in the litigation.

The bill alleged a definite agreement between the attorneys and Thomas H. Forde, made subsequent to the writing of the letter dated April 23, 1938, addressed to Dr. Forde and the terms thereof accepted and acted upon by him to the effect that the attorneys would proceed with the litigation to a conclusion and that if and when any results were obtained they would then determine the value of the property which would be paid from the proceeds of the property either through use or sale and that Aimee B. Forde was present at the time of the conversations and when the agreement was reached, she never at any time repudiated or denied the subsequent agreement, with reference to fees incurred for the removal or cancellation of the restrictive uses on the property owned by her and husband by the entireties as imposed by the ordinance. That the professional services of the attorneys resulted in a benefit to the property and enhanced its value to a sum between $150,000.00 to $200,000.00

The answer of the defendant to the bill of complaint neither admits, confesses or denies the material allegations thereof. It is contended in the answer that the letter written by the attorneys on April 23, 1938, addressed to Dr. Forde and the terms of employment named therein were accepted and payments made in accordance therewith to the attorneys constituted the sole and only contract between the parties as to counsel fees and a small balance was due the plaintiffs for services rendered. Testimony was taken on the issues made and submitted to the chancellor, resulting in a final decree in conformity with the defense set out in the answer. Plaintiffs appealed therefrom.

A careful study of the record and an analysis of the testimony disclose salient facts common to counsel for both parties: (1) Stapp, Gourley, Ward & Ward were employed by

Dr. Forde to litigate and obtain, if possible, a decree cancelling the zoning ordinance in its application to Lots 40, 41, and 42 of Block 1 owned by the entireties by Dr. Forde and wife, Aimee B. Forde; (2) a letter dated April 23, 1938, addressed to Dr. Forde outlining the amount of fees and designated the three lots owned by Dr. Forde and Aimee B. Forde; (3) T. H. Forde and Aimee B. Forde paid their attorneys on this litigation the sum of $1195.00; (4) the suit as filed was by Thomas H. Forde and wife, Aimee B. Forde, against the City of Miami Beach; (5) orders allowing intervention and bringing into the suit many other parcels of land affected by the zoning ordinance; (6) the divorce decree of Forde v. Forde and the conveyance by the decree, subject to incumbrances and liens, of the three lots to Aimee B. Forde; (7) the death of Aimee B. Forde and substitution of proper parties; (8) Dr. Thomas H. Forde did not appear as a witness in the case at bar; (9) only W. G. Ward testified as to a subsequent agreement about fees with the Fordes; (10) The circuit court files in Forde v. City of Miami Beach were offered and received in evidence and a transcript thereof having been previously certified to this Court; (11) refinancing by attorney Ward of all mortgages against the three lots after the entry of the cancellation decree, foreclosure having been instituted on one of the mortgages; (12) the value of the three lots was enhanced by the decree of cancellation.

Attorney Ward testified that the letter of April 23, 1938, was a proposal for fees for services in behalf of the two Fordes against the City of Miami Beach, limited to the three lots. Additional parties and many other parcels of land, not contemplated when the letter was written, subsequently came into the suit. He tried to get the Fordes to pay or agree to pay him a reasonable fee. He testified, in part, viz:

"A . . . In the meanwhile, during the progress of the investigation and discussion of this matter with P. L. Watson, M. D. Futch, and half dozen other brokers and real estate brokers, it was then ascertained that there would be a regional fight that developed up there if this thing was started. Based upon that and the fact that the Fordes had no money —not enough to carry out this proposed agreement, I simply

started on the deal because something had to be done, and we drew up the bill of complaint and filed it. They put up either the $250.00, or it could have been $300.00, because we had a lot of expenses which we had to pay for photographs and maps and things of that type, and we filed the suit immediately. The intervenors came into the case and it became a regional proposition. From that time on we were trying to do the best we could. They had no money. They couldn't pay according to any schedule, and we had to pay money out of our own pocket, and I was trying to get some definite agreement with them—both from them, and from Mr. Mercer afterwards—and was perfectly willing to abide by any kind of agreement we could get together on, but it was always a one-way proposition—they never could pay the court costs, so it became incumbent upon me to advance them money from time to time, till finally what few payments they did make dribbled out entirely and I had to carry the entire balance of the litigation out of my own pocket. That is the story. I don't know what the fee agreement was. I tried to get it boiled down, as my letters will show. I wrote to Mr. Mercer, I wrote to Mr. Alcock, and invited them to come into the fight and to help and do anything we could to win the case. That is the only thing I can say about it. . . . A. There was no definite agreement fixed as between the parties. I insisted on some definite agreement being made and no one would ever agree with me on anything. I kept insisting. I tried to do it. I wrote letters. . . . A. I will be very brief. When Mr. Gourley died in the first part of August, 1939, due to the winding up of the affairs we at that time tried again to pin this thing down on some kind of a fee basis and we were unable to do so. Again when Mr. Stapp died we tried to do the same thing. And we have never been able from any source—from Mr. Mercer, or from Mr. Alcock, or at that time from Mrs. Forde or Doctor Forde—to ever tie this thing down to where they agreed to anything and paid it. . . .

"Q. (By Mr. Cushman) Referring to Plaintiff's Exhibit 4, I understand your testimony to be that this is correct so far as the claim of the plaintiff in this case in concerned. Is

that correct? A. As far as reflected on our books is concerned. We are not claiming, Mr. Cushman, on the basis of any contract at this time because, as we say, any contract which we had was apparently abandoned by our clients and we were left on our own. From that time on we claim to be paid on quantum meruit basis."

Introduced into evidence and before the chancellor below at the time of entering the challenged decree were the circuit court files, and, on a certified copy thereof, we based our opinion in Forde, et al., v. City of Miami Beach, *supra*. We adopted the opinion on April 18, 1941. The divorce decree in Forde v. Forde, was entered several months thereafter on December 9, 1941, and therefore the title to the three lots, during the litigation, rested in Thomas H. Forde and Aimee B. Forde, husband and wife, by the entireties. The divorce decree, in effect, conveyed the interest of Thomas H. Forde in and to the three lots to Aimee B. Forde, subject to incumbrances and liens then of record. Aimee B. Forde, with her husband, T. H. Forde, prior to the entry of the divorce decree, attended some thirty, or more, hearings before the special master, and she was informed and well acquainted with each successive step of the litigation having as its objective a cancellation of the restrictions on the three lots imposed by the ordinance.

The record discloses that attorney Ward conducted the entire litigation in behalf of the Fordes, as plaintiffs. He submitted to the special master the testimony of many witnesses in their behalf. Likewise numerous Exhibits material and pertinent to the issues were placed by him in the record. He cross examined in behalf of his clients the many witnesses offered by the defendant City and the intervenors. Objections were made by him to the admission of evidence. We conclude from this record that the interests of the Fordes were so inextricably interwoven with both the favorable and unfavorable issues and testimony introduced by the intervenors, affecting additional parcels of land coming into the suit, until it is fair and reasonable to conclude that a large and complicated law suit developed after filing the bill of complaint for the Fordes.

The testimony of attorney Ward is not discredited to the effect that the Fordes when instituting the suit were in financial difficulties; that the attorney demanded of the Fordes an agreement about fees during the program of the litigation. The attorney outlined to them his conception of the amount of a fee. The Fordes knew intervenors and additional parcels of land were brought into the suit and they had only paid part of a fee at the time. The attorney's letter pointed out that $2,500.00 was his minimum fee. The Fordes had the power to dismiss the suit before final decree but they did not; they knew the restrictions rendered their investment worthless and a removal would establish a sound investment. It is equitable and just to conclude under the peculiar conditions and circumstances that the Fordes by continuance of the suit, with a knowledge of its broad and comprehensive ramifications, established on their part an implied promise to pay a reasonable fee for the labor and services performed. See Knabb v. Mabry, 137 Fla. 530, 188 So. 586.

It is our view that the plaintiff in the case at bar is entitled to a reasonable fee, less the amount of previous payments made, and that an equitable lien be decreed against the three lots for the amount thereof.

The decree appealed from is hereby reversed for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

BUFORD, C. J., TERRELL and ADAMS, JJ., concur.

