107 So.2d 238 (1958)
Ira E. BILLINGHAM, Appellant,
v.
Ellsworth W. THIELE et al., Appellees.
No. 75.
District Court of Appeal of Florida. Second District.
July 30, 1958.
Rehearing Denied September 8, 1958.
A.N. Spence, Miami, for appellant.
Edward A. Linney, of Nelson & Linney, St. Petersburg, for appellees.
SHANNON, Judge.
The appellant, an attorney at law, who was the plaintiff below, appeals from the final decree of the chancellor below holding that the plaintiff did not have a lien upon the real property involved and also, of his own motion, setting aside a summary judgment against certain defendants.
The defendants, individually, were owners of certain small tracts of land referred to as "units" which they had purchased from a corporation known as Osceola Groves, Inc. After purchasing these lands the defendants had leased them back to the Osceola Groves, Inc. for 99 years under an agreement whereby the Osceola Groves, Inc. would plant and care for the various units, deducting the costs and then paying to the owner 80 percent of the net proceeds received in the sale of citrus products. Prior to the time in question the various individual owners organized a group known as the Unit Owners Protective Group and each individual signed an instrument called "authority to represent", which read as follows:

*239 "As a member of the Unit Owners Protective Group re Osceola Groves, Inc., I or we hereby authorize and request that the Committee of the group retain and employ their attorney, Ira E. Billingham, Esq., of Miami, Florida, to represent me in all matters pertaining to my interests in real property now being operated and managed by Osceola Groves, Inc., of Clewiston, Florida, its present or past officers thereof, to bring such legal action for damages or any other procedure necessary for my or our protection.
"I own or have acquired the following described property in the Osceola Groves, Inc. subdivisions in Palm Beach County, Florida:
"Tract #
"Unit #
"It is further understood that all legal and other expenses are to be prorated equally among the Unit Owners Protective on a unit basis."
The plaintiff, as an attorney, did various legal work for the defendants including his having Osceola Groves, Inc. adjudged bankrupt, and through the bankruptcy proceedings was successful in getting the 99 year leases and the supplemental agreements cancelled and the property relieved of any charge for maintenance costs, etc. While still representing the defendants, plaintiff filed a suit against them for his fees and had a Notice of Lis Pendens placed against various pieces of property owned by such defendants. This suit was filed on July 28, 1955. In this suit it was alleged:
"It was further understood and agreed * * * that a lien would be placed upon the property, owned by the members, for the value of such service rendered until the same was paid or released."
There was no service upon the defendants and the suit was allowed to remain dormant until July 27, 1956, when the plaintiff filed another suit against the same defendants and had another Notice of Lis Pendens filed. In this suit there was also an allegation identical to the allegations which we have already quoted to the effect that there was an agreement between the plaintiff and defendants that a lien would be placed upon the property of the defendants for the value of the plaintiff's service. In the latter suit service was had against all the defendants, some of whom answered and some of whom did not. Against the latter defendants he took decrees pro confesso, which were followed by the entry of a summary judgment. The defendants who answered filed pleadings including an amended answer, and amended motion to dismiss and a motion to dissolve and discharge Notice of Lis Pendens. Under date of May 16, 1957, the chancellor made its Order of Reference to the Special Master, "To try the issue as to the merits of said Motion to Dissolve and Discharge the Notice of Lis Pendens * * * and to make report to this Court of his findings of fact, conclusions of law, and recommendations." Pursuant to the Order of Reference the Special Master took testimony, including that of the plaintiff, and filed the same on July 18, 1957, in which, as a conclusion of law, he held that the plaintiff did not have a lien upon the real property of the defendants and upon his findings that the summary judgment against the nonanswering defendant could not be set aside and declared the same to be "the law of the case".
The chancellor held, upon exception to the Master's report, that the plaintiff did not have a lien on the property of the defendants and, of his own motion, the chancellor set aside the summary judgment and decrees pro confesso against the nonanswering defendants.
The plaintiff, in his appeal, assigns two points to be argued:
1. That the chancellor erred in holding that the plaintiff did not have a lien upon the real property of the defendants, and
*240 2. The chancellor erred in setting aside the summary judgment.
In his testimony plaintiff readily admits that there was no agreement with the defendants relative to his having a lien on the land other than as shown by the agreement. So it is a question under the facts in this case whether he could legally impress a lien upon the real property of the defendants as was attempted.
The special master, after citing many Florida cases, decided that he, the plaintiff, had no right to a lien under the fact situation as is here involved. We have come to a definite conclusion after studying all of the Florida cases on the subject.
In 7 C.J.S. Attorney and Client § 228 c, the general rule is stated to be that, in the absence of statute or special agreement, an attorney has no lien on the land of his client, although he has successfully prosecuted a suit to establish the clients' title, or recovered title or possession for the client, and cites the case of Guthrie v. Home Building & Loan Co., 116 Fla. 822, 156 So. 882, as authority for the majority rule. Then, in 5 Am.Jur., Attorney at Law, Section 238, the same rule is set out, but a Florida case is cited for the minority, Scott v. Kirtley, 113 Fla. 637, 152 So. 721, 93 A.L.R. 661.
In the Guthrie case, an attorney sought to have a lien declared in his favor by reason of fact that he had foreclosed certain mortgages and rendered certain other legal services. In sustaining the lower court's dismissal of the bill of complaint, our court stated:
"If, as attempted to be alleged in the amended bill of complaint, the complainant has an equitable interest to be subserved by the payment over to him of certain moneys that are due to be paid to him from time to time by defendant when and as certain lands and properties foreclosed upon (to which it is alleged defendant has acquired the title by reason of the legal services furnished by complainant in that behalf) are resold by the defendant and the purchase price thereof realized by it, complainant may have an equity against defendant in the nature of a right to specific performance of the defendant's agreement to pay over to him, as the rightful recipient thereof, those moneys which when and after receipt would constitute complainant's attorney's fees, and concerning which defendant would be charged with a liability to account because of the trust nature of the underlying transactions and relationship between the parties heretofore transpiring with reference thereto.
"(1) But neither the original bill nor the amended bill seems to have been framed on any such theory, but rather on the theory that complainant has a present lien against the properties themselves, not on the proceeds of the sale thereof for the amount of his attorney's fees included therein."
This case very definitely holds that an attorney has no lien for his fees against the land that was acquired by his clients by reason of the attorney's services in foreclosing, but also in this case the court states:
"Since this cause was decided in the court below, this court has concluded some of the propositions involved herein, by its decision rendered in the case of Scott v. Kirtley, 113 Fla. 637, 152 So. 721, 93 A.L.R. 661. See, also, Alyea v. Hampton, 112 Fla. 61, 150 So. 242, and Smith v. Tydings, 100 Fla. 1414, 131 So. 319."
Since the Guthrie case holds in the absence of an agreement that the attorney had no equitable lien upon the land itself, we should have to look at Scott v. Kirtley, supra. In the Scott case the attorney, when he was employed by the defendant, was told that the defendant was completely out of funds and unable to pay the attorney a *241 retainer or other fee at the time she engaged him, and that it was accordingly arranged between the parties that the attorney so employed would be paid his fees out of what the client should realize as a result of the successful efforts of the attorney. Our court held that the attorney had an equitable lien on the property he recovered for his client stating [113 Fla. 637, 152 So. 723]:
"We are of the opinion that where, as the result of services rendered by an attorney at law in suing for and recovering for his client certain real estate, the client has realized the real estate as fruits of the attorney's professional services, under an express or implied understanding on the part of both attorney and client that a reasonable attorney's fee would be charged, and would of necessity be payable out of the property realized by the client as a result of the successful efforts of the attorney in litigating for it, even in the absence of any express contract for a definite amount of fee, an equitable lien, based upon the fundamental maxim of equity that no one shall be unjustly enriched at another's expense, may be implied and declared by a court of chancery out of general considerations of right and justice which must be applied to the relations of the attorney and client with reference to the fruits of the transaction, and the circumstance of their dealings with each other, with the understanding that the services of the attorney would be payable out of what the client should realize as a result of the successful efforts of the attorney. 17 R.C.L. p. 605, par. 14; Graeber v. McMullin, 10 Cir., 56 F.2d 497, certiorari denied by United States Supreme Court in 287 U.S. 603, 53 S.Ct. 9, 77 L.Ed. 525." (Emphasis added.)
Notwithstanding that in a dissenting opinion in the Scott case one of the members of the court stated that "there was no agreement between the parties * *." There was, as we view it, at the time the attorney was employed a very definite understanding that he would have to get his fee out of the property recovered. The Scott case was decided under date of December 6, 1933, and the Guthrie case under date of October 12, 1934. As we see it the Guthrie case does not override the Scott case, but it can be distinguished. The Guthrie case held that the attorney had no lien for his fees which his client acquired by reason of the attorney's services in the foreclosing proceedings absent the arrangement or agreement that he would have a lien whereas in the Scott case the attorney had, in view of all the facts, an understanding that his services would be payable out of what the client should realize as a result of the successful efforts of the attorney.
In the Guthrie case the court cites the cases of Alyea v. Hampton, 1933, 112 Fla. 61, 150 So. 242, and Smith v. Tydings, 100 Fla. 1414, 131 So. 319.
In the Alyea case the attorney had a definite agreement with the defendant that he would have for his fees for services rendered a certain proportion of the judgment recovered in one case and that he would have one-half of the land recovered in the other case, together with a certain portion of a judgment recovered in that case. The decision in the Alyea case was consequently one wherein the attorney had an agreement with his client. In the case of Smith v. Tydings, supra, plaintiff filed a bill of complaint seeking to impress a lien on certain property of the defendant, which lien was granted for services of the attorney for a suit which he had theretofore prosecuted and in which suit the final settlement was made between the parties for final decree. This case was dismissed upon a demurrer to the bill of complaint in that the bill of complaint showed that the plaintiff had an adequate remedy at law in having said that the bill contained an agreement between the client and his attorney that the attorney should recover for *242 his fees out of the land involved, we must take this decision as being under the majority rule.
The next case that we shall discuss is Knabb v. Mabry, 1939, 137 Fla. 530, 188 So. 586, 588, wherein the attorneys successfully prosecuted foreclosure proceedings and in the foreclosure decree the attorneys' fees were decreed as a lien upon the property. Thereafter, the defendant bought in the property at the sale and asked the attorneys to wait for their fees as the estate in which they foreclosed the mortgage was short on cash. The defendant recognized that the attorneys had a right to a lien on the property and suggested that such attorneys bring a suit to declare a lien. In holding that the attorneys were entitled to a lien on the property, the court stated:
"(1) We are of the opinion that no reversible error has been shown and that the decree of the chancellor here appealed from must be affirmed upon the authority of the case of Scott v. Kirtley, 113 Fla. 637, 152 So. 721, 722, 93 A.L.R. 661, which case settled in favor of the appellees the controlling question raised by this appeal. * *"
The decision in the Knabb case was based upon the decision of the court, Scott v. Kirtley, supra. Both of these cases come under the heading of special agreement cases and are not to be confused with the present case.
The case of Ward v. Forde, 1944, 154 Fla. 383, 17 So.2d 691, 695, is strongly urged upon us by the plaintiff. In the Ward case the court stated in part as follows:
"The testimony of attorney Ward is not discredited to the effect that the Fordes when instituting the suit were in financial difficulties; that the attorney demanded of the Fordes an agreement about fees during the program of the litigation. The attorney outlined to them his conception of the amount of a fee. The Fordes knew intervenors and additional parcels of land were brought into the suit and they had only paid part of a fee at the time. The attorney's letter pointed out that $2,500 was his minimum fee. The Fordes had the power to dismiss the suit before final decree but they did not; they knew the restrictions rendered their investment worthless and a removal would establish a sound investment. It is equitable and just to conclude under the peculiar conditions and circumstances that the Fordes by continuance of the suit, with a knowledge of its broad and comprehensive ramifications, established on their part an implied promise to pay a reasonable fee for the labor and services performed. See Knabb v. Mabry, 137 Fla. 530, 188 So. 586.
"It is our view that the plaintiff in the case at bar is entitled to a reasonable fee, less the amount of previous payments made, and that an equitable lien be decreed against the three lots for the amount thereof."
And so we may class the decision in the Ward case as coming very definitely under the minority rule and is, to a certain extent, contra to the rule in Guthrie v. Home Building & Loan Co., supra.
In the case of Greenfield Villages, Inc., v. Thompson, Fla. 1950, 44 So.2d 679, 682, in which the attorneys involved were allowed an equitable lien, the court said:
"* * * The power of a court of equity to award equitable liens for attorney fees. See Ward v. Forde, 154 Fla. 383, 17 So.2d 691; Knabb v. Mabry, 137 Fla. 530, 188 So. 586; Scott v. Kirtley, 113 Fla. 637, 152 So. 721, 93 A.L.R. 661."
The language that is quoted above would seem to imply that absent any agreement for a lien a court of equity would allow an equitable lien for attorneys' fees. However, in the Greenfield case it will be observed that the agreement was that fees would be paid out of monies arising from the sale of *243 the described lots after the termination of the litigation and hence, this case must be classed as one wherein a special agreement was shown and so understood this case is an exception to the majority rule. Following closely behind the Greenfield case is the case of Nichols v. Kroelinger, Fla. 1950, 46 So.2d 722, 724, where the court says:
"* * * The rule is well settled that an attorney's charging lien does not extend beyond the fees and charges in the suit in which the judgment is recovered unless there is a statute so providing. His right to a charging lien on the judgment, decree or award for expenses and compensation to secure it has generally been recognized, but is regulated either by statute or the common law. At common law the attorney's charging lien attached to the judgment, rather than to the cause of action, and could be enforced by appropriate action."
Continuing the line of Florida cases we come next to Stern v. Stern, Fla. 1951, 50 So.2d 119, 120, where "the chancellor retained jurisdiction of the cause to award plaintiff's solicitors a lien on her undivided half interest in and to the home and furnishings to secure their fees." On appeal our Supreme Court reversed and said as follows:
"* * * There are cases in which an attorney's lien for services may be impressed and enforced in equity, as when his contract so provides or when he collects money and moves promptly to safeguard his lien, but such a lien ordinarily conveys no interest in the rem that may be enforced at law. Nichols v. Kroelinger, Fla., 46 So.2d 722, 723. * * *"
One of the most recent cases in Florida dealing with attorney's liens is Winn v. City of Cocoa, Fla. 1954, 75 So.2d 909, which, although not dealing with real property, did point out that Florida has always allowed attorney's liens against the fund recovered by the attorney, at least while it is in the control of the court. In the opinion the court refers to Randall v. Archer, 5 Fla. 438, and also to the case of Chancey v. Bauer, 5 Cir., 97 F.2d 293, 294. The Chancey case, which was decided in 1938, states:
"In Florida, as in most states, a lawyer has a retaining lien upon papers in his hands, and, according to the circumstances, a charging or equitable lien on recoveries obtained for his client in the suit for the services in which the charge is made. Carter v. Davis, 8 Fla. 183; Alyea v. Hampton, 112 Fla. 61, 150 So. 242; Scott v. Kirtley, 113 Fla. 637, 152 So. 721, 93 A.L.R. 661; 5 Am.Jur., Attorneys at Law, §§ 219 to 248, incl.; 7 C.J.S. Attorney and Client §§ 211 to 217, incl. Federal courts have always recognized and enforced these liens. United States ex rel. Payne v. Call, 5 Cir., 287 F. 520; Cooper v. McNair, D.C., 49 F.2d 778, 779. Cf. Webster v. Sweat, 5 Cir., 65 F.2d 109. In Florida, as elsewhere, the charging lien is an equitable right to have the costs and fees due him for services in the suit secured to him in the judgment, or recovery in that particular suit. 7 C.J.S. Attorney and Client, § 211. It is based on the natural equity that plaintiff should not be allowed to appropriate the whole of a judgment in his favor without paying for the services of his attorney in obtaining such judgment. Graeber v. McMullin, 10 Cir., 56 F.2d 497; Cohen v. Goldberger, 109 Ohio St. 22, 141 N.E. 656. No lien may therefore arise where there have been no proceeds recovered in the suit as to which the services are claimed. 5 Am.Jur. 395; Trustees of Internal Improvement Fund v. Greenough, 105 U.S. 527, 26 L.Ed. 1157. * * *"
We have reviewed the cases decided by the Florida Supreme Court, as well as Chancey v. Bauer, supra, and have come to the conclusion that with the exception of Ward v. Forde, supra, all of the cases *244 adhere to the majority rule, and where the facts are as they are here, that there is no express or implied agreement with a client regarding a lien for his services, or where there is no special equity set forth or any property in court or in the attorney's hand, the lien will not be allowed.
Under the plaintiff's second point he urges upon us that the chancellor erred when he, of his own motion, vacated a summary judgment against the defaulting defendants. He urges on us the rule established from United States Gypsum Co. v. Columbia Casualty Co., 124 Fla. 633, 169 So. 532, 535, which holds:
"Briefly elaborated, the doctrine `law of the case' means that whatever is once irrevocably established as the controlling legal rule of decision between the same parties in the same case continues to be the `law of the case,' whether correct on general principles or not, so long as the facts on which such decision was predicated continue to be the facts of the case before the court."
The decree pro confesso and summary judgment were predicated on the plaintiff's bill of complaint, which alleged that there was an agreement to place a lien upon the unit owners' property for the value of the plaintiff's services. Then, in his testimony the plaintiff admits that this "fact" was incorrect and as we have only the signed agreement of authorization to interpret, we can readily see that the facts have changed in the case. The chancellor below necessarily found that there was no agreement for a lien and if the plaintiff had a lien it had to be because equity would grant it to the plaintiff. Under these facts the chancellor quite properly vacated his former decree.
Affirmed.
ALLEN, Acting Chief Judge, and GERALD, LYNN, Associate Judge, concur.